## IN THE UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF NEW JERSEY
## CAMDEN DIVISION

| | | |
|---|---|---|
| **JOHN DOE**, by and through JACK DOE and JANE DOE, **JACK DOE**, individually and on behalf of his son, JOHN DOE, **JANE DOE**, individually and on behalf of her son JOHN DOE | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. _____ |
| v. | ) ) | |
| **CHRISTOPHER J. CHRISTIE**, Governor of the State of New Jersey, in his official capacity, | ) ) ) ) | |
| Defendants. | ) ) | |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES

COME NOW Plaintiffs, JOHN DOE, by and through his parents, JACK and JANE DOE, JACK DOE, individually and on behalf of JOHN DOE, and JANE DOE, individually and on behalf of JOHN DOE (collectively "Plaintiffs"), by and through counsel, and file this civil action to respectfully request this Court to issue Injunctive and Declaratory Relief and Nominal Damages for the constitutional violations described below. In support, Plaintiffs aver as follows:

### INTRODUCTION

1.      Plaintiffs bring this civil action to challenge the constitutionality of New Jersey Assembly Bill Number 3371, "An Act concerning the protection of minors from attempts to change sexual orientation," ("A3371"), and to prevent A3371 from violating their federal constitutional guarantees of Freedom of Speech, Free Exercise of Religion, and parental rights. **This law went into full effect immediately, upon being signed by Governor Christie on August 19, 2013, and thus time is of the essence to obtain judicial relief because Plaintiffs are currently**

**suffering immediate and irreparable injury to their constitutional liberties and will continue to suffer irreparably injury until this unconstitutional law is enjoined.**

2.     Plaintiffs Jack and Jane Doe have the fundamental right, as parents, to direct the upbringing and education of their child, Plaintiff John Doe, and to do so free from unconstitutional government interference. They also have the First Amendment rights as parents to religious freedom and free speech, including the right to receive information and to provide information to their children.

3.     Plaintiff John Doe also has First Amendment rights to engage in constitutionally protected speech and religious freedom, and the right not only to speak, but also to receive information.

4.     A3371 denies Plaintiff John Doe, as well as all other minors in New Jersey their right to self-determination in the exercise of their religious and moral values, and their right to receive counseling consistent with those values, by preventing them from obtaining counseling from licensed mental health professionals to address the conflict and confusion about or questions concerning their unwanted same-sex sexual attractions, behaviors, or identity and to reduce or eliminate those unwanted same-sex sexual attractions, behaviors, and identity, including but not limited to sexual orientation change efforts ("SOCE") counseling.

5.     By denying John Doe and all New Jersey minors access to counseling from licensed professionals (i.e., "talk therapy") that can help those minors who so desire to reduce or eliminate their unwanted same-sex attractions, behaviors, or identity, A3371 infringes on the fundamental rights of Jack and Jane Doe to direct the upbringing and education of their child, which includes the right to meet each child's individual counseling, developmental, and spiritual needs.

6.     Despite the value and benefit that Plaintiffs have experienced by receiving SOCE counseling and their sincere desire to continue to receive such counseling from a licensed mental health counselor in New Jersey, Defendant is enforcing A3371 against all licensed mental health counselors in New Jersey who could provide SOCE counseling to John Doe and is causing immediate and irreparable harm to Plaintiffs.

7.     A3371 is currently harming and will continue to harm Plaintiffs by preventing them from obtaining the counseling services they choose to resolve or reduce unwanted same-sex sexual attractions, behaviors, or identity.

8.     By denying minors the opportunity to pursue a particular course of action that can help them address the conflicts between their religious and moral values and same-sex attractions, behaviors, or identity, A3371 has caused, is causing, and will continue to cause those minors, including Plaintiff John Doe, confusion and anxiety over same-sex sexual attractions, behaviors, or identity that the minors must balance, resolve, and/or eliminate with respect to their religious and moral values, and therefore infringes on their free speech and religious liberty rights.

9.     Consequently, Plaintiffs seek Preliminary and Permanent Injunctive Relief enjoining Defendant from enforcing A3371 because it violates (1) Plaintiffs' rights to freedom of speech and free exercise of religion, guaranteed by the First and Fourteenth Amendments to the United States Constitution, and (2) Plaintiffs Jack and Jane Doe's fundamental rights to direct the upbringing of their child guaranteed by the Fourteenth Amendment.

10.    Plaintiffs also seek Declaratory Relief from this Court declaring that A3371 is unconstitutional on its face and as applied, as well as nominal damages for the past violation of their rights.

## JURISDICTION AND VENUE

11.     This action arises under the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

12.     This Court has jurisdiction of this action under 28 U.S.C. §§ 1331, and 1343.

13.     This Court is authorized to grant the Plaintiffs' prayer for relief regarding costs, including reasonable attorney's fees, pursuant to 42 U.S.C. § 1988.

14.     This Court is authorized to grant declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, implemented through Federal Rule of Civil Procedure 57, and to issue the preliminary and permanent injunctive relief pursuant to Federal Rule of Civil Procedure 65.

15.     Venue is proper under 28 U.S.C. § 1391(b). Each and all of the acts alleged herein were done and are to be done by Defendant and/or his agents, and each of them, not as an individual, but under the color and pretense of statutes, ordinances, regulations, customs, and uses of the United States of America and of the State of New Jersey.

## PARTIES

16.     Plaintiff John Doe is a 15 year old minor and resident of New Jersey who is seeking SOCE counseling from a licensed mental health counselor in New Jersey, but is currently being prevented from doing so by A3371 and Defendant's enforcement of A3371.

17.     Plaintiffs Jack and Jane Doe, both individually and on behalf of John Doe, are residents of the State of New Jersey and are the parents of John Doe. They are seeking to provide their son, John Doe with the opportunity to receive SOCE counseling from a licensed mental health counselor in New Jersey but are currently being prevented from doing so by A3371 and Defendant's enforcement of A3371.

18.     Defendant Christopher J. Christie is the Governor of the State of New York and is responsible for executing the laws of New Jersey. He is sued in his official capacity.

## STATEMENT OF FACTS

19.     Following the New Jersey Legislature's passage of A3371, Defendant Governor Christie signed A3371 on Monday, August 19, 2013, which amended Title 45 of the Revised Statutes of New Jersey, and **the law went into effect immediately**. A3371 is attached hereto as Exhibit A and incorporated herein by reference.

20.     Section 2(a) of A3371 states:

> A person who is licensed to provide professional counseling under Title 45 of the Revised Statutes, including, but not limited to, a psychiatrist, licensed practicing psychologist, certified social worker, licensed clinical social worker, licensed social worker, licensed marriage and family therapist, certified psychoanalyst, or a person who performs counseling as part of the person's professional training for any of these professions, shall not engage in sexual orientation change efforts with a person under 18 years of age.

21.     Section 2(b) of A3371 states:

> "[S]exual orientation change efforts" means the practice of seeking to change a person's sexual orientation, including, but not limited to, efforts to change behaviors, gender identity, or gender expressions, or to reduce or eliminate sexual or romantic attractions or feelings toward a person of the same gender; except that sexual orientation change efforts shall not include counseling for a person seeking to transition from one gender to another, or counseling that:
>
> (1) provides acceptance, support, and understanding of a person or facilitates a person's coping, social support, and identity exploration and development, including sexual orientation-neutral interventions to prevent or address unlawful conduct or unsafe sexual practices; and
>
> (2) does not seek to change sexual orientation.

22.     Section 3 of A3371 states that "[t]his act shall take effect immediately."

## THE APA TASK FORCE REPORT

23.     The New Jersey Legislature primarily relied on the Report of the American Psychological Association Task Force on Appropriate Therapeutic Responses to Sexual Orientation. A Copy of the APA Report is attached hereto as Exhibit C and incorporated herein.

24.     The APA Task Force was charged with reporting on "the appropriate application of affirmative therapeutic interventions *for adults* who present a desire to change their sexual orientation or their behavioral expression of their sexual orientation." APA Report at 4.

25.     The APA Report states that "recent SOCE research cannot provide conclusions regarding efficacy or effectiveness." *Id*. at ix.

26.     The APA Report noted that people had reported "varying degrees of satisfaction and varying perceptions of success", had "altered their sexual orientation;" "participants had multiple endpoints, including LGB identity, ex-gay identity, no sexual orientation identity, and a unique self-identity, and had reported "a range of effects from their efforts to change their sexual orientation, including both benefits and harm". *Id*. at 45, 50, 53.

27.     The APA Report states that it "performed a systematic review of the peer-reviewed literature" and found "some evidence**" of both harm *and* benefits** produced by SOCE (for adults). *Id*. at 2-3, 42, 49-50.

28.     The APA Report noted that "[t] o date, the research has not fully addressed **age**, gender, gender identity, race, ethnicity, culture, national origin, disability, language, and socioeconomic status in the population of distressed individuals." *Id*. at 120.

29.     The APA Report highlighted that "sexual minority *adolescents are underrepresented* in research on evidence-based approaches, and sexual orientation issues in *children* are **virtually unexamined."** *Id*. at 91 (emphasis added).

30.    It stated that "[n]one of the recent research (1999-2007) meets methodological standards that permit conclusions regarding efficacy or safety." *Id*. at 2.

31.    The APA Report concluded that that "**there is a dearth of scientifically sound research on the safety of SOCE**. *Early and recent research studies provide no clear indication of the prevalence of harmful outcomes* . . . because no study to date of scientific rigor has been explicitly designed to do so." *Id*. at 42 (emphasis added).

32.    It also noted that "[t]here is **no** research demonstrating that providing SOCE to children or adolescents has an impact on adult sexual orientation." *Id*. at 4 (emphasis added).

33.    Given these limitations, the Task Force concluded that "research on SOCE (psychotherapy, mutual self-help groups, religious techniques) has ***not answered basic questions of whether it is safe or effective and for whom*** . . . . *[R]esearch into harm and safety is essential*." *Id*. at 90 (emphasis added).

34.     Indeed, the only "evidence" of harm the Task Force discovered was some anecdotal testimony of "some individuals [who] reported being harmed by SOCE." *Id*. at 120.

## **<u>JOHN DOE</u>**

35.    John Doe is currently 15 years old, lives in New Jersey, and desires to continue counseling for his unwanted gender identity disorder and unwanted same-sex attractions with a licensed mental health provider in New Jersey, but is currently prohibited from obtaining such counseling because of A3371 and Defendant's application of it.

36.    John Doe began experiencing gender identity disorder when he was around nine years old, and he remembers having a bias against the male gender and thinking that boys were stupid because his mother talked negatively about his father.

37.     When John Doe was ten years old, he began developing a suicidal ideation and frequently thought of killing himself because he did not like himself and was significantly confused about his own personal identity.

38.     He began to think he would like himself much better if he was a girl. In an effort to begin to look more feminine, he began to secretly shave his armpits and pubic hair.

39.     John Doe also attempted to cover up other gender expressions and mannerisms typically associated with an adolescent male, and he would attempt to display female mannerisms and expressions.

40.     During this period, John Doe hated everything masculine about himself, and sincerely thought he would be happy with himself and his life if he could be feminine.

41.     John Doe began to develop feelings of same-sex attractions when he was around 12 or 13 years old, and he remembers secretly having attractions and desires for some of the male celebrity figures.

42.     John Doe did not understand why he had these feelings, did not want them, and began to experience the most intense feelings of hopelessness and frequently thought of killing himself.

43.     Because of those thoughts of hopelessness and despair, John Doe also began to hate himself for the impression he had that he was not as good as the men he would see in magazines, who were muscular and athletic, and that he was never going to be like those ,men.

44.     John Doe began to think that if he were a girl, then his hatred and despair would disappear because he would not have to compete with these other boys anymore. He experienced feelings of despair because he believed that he would never be good enough if he remained a boy.

45.     John Doe continued to feel hatred toward himself, and this began to cause psychological distress, which manifested in feelings of intense anxiety, panic, and obsessive-compulsive traits.

46.     During these years, John Doe's hatred of himself was the worst it had ever been, and he was having frequent panic attacks during the day and trouble sleeping at night.

47.     John Doe developed feelings that his life was spinning out of control and became severely depressed, and his depression was so intense that he began to have thoughts of killing himself nearly all day long, every single day.

48.     When John Doe's suicidal thoughts reached this alarming frequency, his parents wanted to get him help, and John Doe wanted help as well.

49.     John Doe has a sincerely held religious belief and conviction that homosexuality is wrong and immoral, and he wanted to address that value conflict because his unwanted same-sex attractions and gender confusion are contrary to the fundamental religious values that he holds.

50.     John Doe has a sincere desire to to live out his religious values and does not want to act out on unwanted same-sex attractions that violate his sincerely held religious beliefs.

51.     John Doe has a sincere desire to resolve his unwanted same-sex sexual attractions and gender identity so that he can act in conformity with his religious beliefs.

52.     Because of those sincerely held religious beliefs and because he did not want to experience these same-sex attractions or gender confusion, John Doe talked with his parents about having a counselor help him.

53.     John Doe and his parents agreed to seek help from a licensed professional counselor who provided counseling for young men and women desiring to reduce or eliminate their unwanted same-sex sexual attractions, behaviors, or identity.

54.    After John Doe's parents contacted his counselor and prior to the beginning of John Doe's SOCE counseling, the counselor and the Doe family discussed the nature of the SOCE counseling that the counselor provides, the theories behind the types of feelings John Doe was having, the causes behind such feelings and why John Doe was feeling so distressed about them.

55.    John Doe's counselor explained to him when he began the SOCE counseling that much of his psychological confusion and distress surrounding his unwanted same-sex attractions and gender confusion was likely rooted in developmental needs that went unfulfilled during his childhood, many of which arose from a father who did not provide sufficient positive male attention.

56.    John Doe started SOCE counseling in May 2011, and he has shown tremendous improvement in his psychological distress about his unwanted same-sex sexual attractions and his confusion concerning his gender identity as a result.

57.    John Doe no longer tries to speak in higher tones, like a girl, as he used to do; he does not shave his body hair anymore; and his relationship with his father has improved tremendously as a result of the counseling he has received.

58.    Most significantly, John Doe no longer has thoughts of suicide as a result of his counseling.

59.    John Doe enjoys the counseling sessions with his counselor and sincerely desires to continue to advance further in overcoming his unwanted same-sex attractions.

60.    John Doe has experienced a significant reduction in his unwanted same-sex attractions, and has described it as only about a 3 out of 10 today, when it used to be 8 out of 10.

61.    Every day would get a little better for John Doe as he continued to receive counseling, and he desperately wants to be able to continue to receive counseling. However, John Doe also

wants to progress in his counseling by engaging the services of a licensed psychotherapist, because such additional counseling would be beneficial to him.

62.     There are still a lot of conversations that John Doe would like to have with a counselor to help him reach his goal of eliminating his unwanted same-sex attractions altogether and resolving the underlying issues that once caused his gender confusion.

63.     John Doe's discussions with his current counselor, who is a licensed social worker in New York, have helped him tremendously, and sometimes talking to a counselor makes all of the difference in the world for him.

64.     John Doe's current counselor focuses primarily on current feelings and anxieties with a forward-perspective. He does not focus much on the introspective root cause or background issues that many licensed psychologists provide in this area.

65.     Because he thought that John Doe might benefit significantly from the discussion concerning the background, causes, and other introspective counseling, John Doe's current counselor recommended that he seek a licensed psychologist who engages in that type of counseling.

66.     John Doe requested that his parents help him find a counselor who could help him with the types of discussions his counselor recommended, and the Does contacted Dr. Ronald Newman, a licensed psychologist in New Jersey.

67.     Dr. Newman informed the Does that because of A3371, there were no licensed psychologists in New Jersey who could provide such counseling or any counseling to reduce or eliminate unwanted same-sex attractions, behaviors, or identity.

68.     John Doe's conversation with his counselor have really helped him reduce his unwanted feelings and attractions.

69.     John Doe has made significant progress, but his struggle is not over and he will continue to need to have conversations with licensed mental health counselors who are professionals in this area of counseling.

70.     Because no licensed mental health professional in New Jersey can provide him with SOCE counseling, John Doe will substantially regress in the significant progress he has made with his current counselor.

71.     Because he cannot receive any SOCE counseling from a licensed mental health professional in New Jersey, John Doe may begin to experience the same feelings of confusion, awkwardness, and unwanted same-sex attractions that he has worked so hard to reduce and eliminate.

72.     Absent SOCE counseling from licensed professionals, John Doe may even begin to have thoughts of suicide again.

73.     John Doe may also begin to have an enormous struggle and temptations that will make it difficult for him to continue to live consistently with his sincerely held religious beliefs and that this will only further add to the significant stress, anxiety, and suicidal ideation that he suffered through prior to being able to receive SOCE counseling.

74.     A3371 has jeopardized the significant healing and restoration that John Doe's SOCE counseling has brought to his family, especially the relationship between his parents and him, and that only though additional counseling can their relationship continue to heal and strengthen.

## **JACK AND JANE DOE**

75.     Jack Doe is the father of John Doe, and Jane Doe is the mother of John Doe.

76.     When John Doe was young, Jack and Jane Doe were very argumentative and would have significant arguments right in front of John Doe, and Jane Doe would sometimes accuse Jack Doe of things or call him names that were negative towards men in general.

77.     Jack Doe often saw his role as the provider and doer and thought his love was manifested by always being on the go to provide for his family.

78.     Because of his efforts and view of his role as the provider, Jack Doe often had raging arguments with Jane Doe for hours well into the night, which hurt Jane Doe emotionally and resulted in significantly negative statements from her concerning men in general.

79.     John Doe witnessed many of these arguments and was always very sensitive and artistic, which is probably why Jane Doe's negative statements about men in general and her husband in particular had a negative impact on John Doe's overall perception of men.

80.     When John Doe was around five years old, Jack and Jane Doe noticed that he had started to play with female dolls or toys, and Jane Doe noticed that he was particularly obsessed with Ariel from "The Little Mermaid."

81.     Jack and Jane Doe frequently noticed that John Doe would sketch pictures of Ariel on any scrap piece of paper he could find, and Jane Doe noticed that he spent many long hours drawing, which her husband did not like.

82.     On numerous occasions, Jane Doe witnessed her husband become frustrated with John Doe because he was not behaving like a typical male, and she had a number of arguments with Jack Doe because of his statements to John Doe criticizing him for exhibiting female characteristics, expressions, and mannerisms.

83.     When John Doe was 10 years old, the Doe family was visiting a friend's house and Jane Doe witnessed her son removing all of his clothes and trying to to dress up in princess clothes.

84.     Jack and Jane Doe were very concerned by this incident because they knew this behavior appeared to be quite disordered, and because they knew that their son was experiencing confusion and distress over his gender identity.

85.     On several occasions, Jack and Jane Doe were extremely fearful about their son's behavior because the significant psychological distress and anxiety that John Doe's gender confusion had created for him was manifesting itself in life threatening ways.

86.     On several occasions, Jack and Jane Doe witnessed John Doe take sharp knives into the bathroom threatening to commit suicide because of his psychological distress about his gender identity and confusion.

87.     Because they knew that John Doe's behavior was of grave concern to his safety and well-being, Jack and Jane Doe began to seek counseling for their son to help him understand and reduce or resolve the significant psychological confusion over his gender identity and his unwanted same-sex attractions.

88.     Jack and Jane Doe searched for a Catholic counselor believing that as long as the counselor shared the Does' sincerely held religious beliefs (they are Roman Catholic), he would be able to help their son regardless of his professional training and licensure in this type of counseling.

89.     Jane Doe has a fairly extensive understanding of the theories relating to gender confusion, same-sex attractions, and SOCE counseling, which she obtained in part from self-study and in part through her Masters in Systematic Theology from Seton Hall University's Immaculate Conception Seminary School of Theology.

90.     Because of her education and understanding of this type of counseling, Jane Doe was surprised and concerned when the unlicensed Catholic counselor they had retained did not seem

to share the same scholarly view of the issues surrounding SOCE counseling as the many experts in the field.

91.     Because this unlicensed counselor did not share the same views as many of the experts in this area and because he was not sufficiently trained or educated in the specific counseling techniques that studies have shown are effective with minors struggling with unwanted same-sex attractions, behaviors, or identity, he was not able to help her son with his significant confusion and distress about his unwanted same-sex attractions.

92.     In fact, John Doe actually seemed only to have more distress and more confusion as a result of this unlicensed counselor being unable to provide specialized and experienced SOCE counseling.

93.     Jack and Jane Doe's concern over the psychological and physical well-being of John Doe reached its peak when the Does took a trip to Myrtle Beach two years ago..

94.     On that trip, Jack and Jane Doe discovered that their son had shaved his body hair, including his armpits, they witnessed him flush his underwear down the toilet, and witnessed their son try to commit suicide by jumping off of the balcony of their hotel room.

95.     When the Does returned home, Jack and Jane Doe found various pornographic pictures and illustrations of men in graphic sexual positions under his mattress, and they realized that their son was having significant psychological and emotional distress over his gender confusion and unwanted same-sex attractions.

96.     Because of their fear and concern over John Doe's psychological distress and suicidal behaviors and because John Doe had approached his parents desperately seeking their help with his psychological distress over his confusion and unwanted same-sex attractions, Jack and Jane Doe contacted the National Association for the Research and Therapy of Homosexuality

(NARTH), which is an organization that provides referrals to individuals seeking SOCE counseling from a licensed mental health professional.

97.    The counselor recommended by NARTH was a licensed clinical social worker, and his offices are located in New York.

98.    Based on their previous experienced with the unlicensed counselor, which only seemed to make their son's psychological distress and confusion worse, Jack and Jane Doe sought only the help of a licensed mental health professional who understood and specialized in this type of counseling.

99.    Jack and Jane Doe contacted the licensed counselor that NARTH had recommended, and the Does all visited his office together.

100.    The counselor explained to the Does his theory of why John Doe was experiencing unwanted same-sex attractions and the gender confusion, which he said were really the manifestation of underlying emotional issues, explained that some of John Doe's emotional and personal identity issues were the result of some childhood wounds that were caused by Jack and Jane Doe's failure to meet some of the needs that John Doe had as a child, and explained that Jack Doe's failure to provide positive male attention caused John Doe's desire to fit in with Jane Doe and identify as a woman, which he said all combined to form what is likely the root cause of John Doe's unwanted same-sex attractions and gender confusion.

101.    Since the counseling with this licensed social worker began, Jack and Jane Doe have noticed significant changes in John Doe, including the fact that he no longer struggles with the significant psychological distress and anxiety over his gender confusion and unwanted same-sex attractions and that he no longer struggles with the serious suicidal thoughts and attempted suicides.

102.    John Doe has frequently told Jack and Jane Doe that he no longer experiences unwanted same-sex sexual attractions as frequently as he did prior to counseling.

103.    The relationship between John Doe and Jack Doe has improved significantly, and their relationship is continuing to improve.

104.    The relationship between the Doe family as a whole has also improved significantly, and John Doe's SOCE counseling has helped to restore the Does' sense of family.

105.    Jack and Jane Doe have spoken with John Doe about how he feels after receiving SOCE counseling, and his reports are always positive, recognizing that he is now embracing his masculinity, that he no longer feels the significant psychological distress resulting from his past gender confusion, and that he no longer has frequent thoughts of committing suicide.

106.    John Doe may need counseling for much of his life, but Jack and Jane Doe are committed to making sure that he has the chance to lead a happy and healthy lifestyle without the significant burden and overwhelming psychological distress that John Doe's gender confusion and unwanted same-sex attractions caused him.

107.    The Does desire that John Doe continue to receive the methods of counseling that will continue to assist him in his progress towards achieving his goals of eliminating his unwanted same-sex attractions.

108.    If John Doe can continue to receive SOCE counseling from licensed mental health professionals, then he will likely be able to continue to make progress toward his goal of eliminating his unwanted same-sex attractions and resolving his confusion concerning his gender identity.

109.    However, if John Doe is unable to receive this SOCE counseling from licensed mental health professionals, then he will likely regress from the significant progress he has made thus

far, will again likely suffer from the gender identity issues and unwanted same-sex attractions that have been significantly reduced, and will likely begin to struggle again with suicidal thoughts and attempts.

110.    Jack and Jane Doe have affirmed John Doe's choice to seek SOCE counseling and never pressured him to either start or continue the counseling. They have seen the counseling benefit John Doe without any evidence of harm whatsoever resulting from the counseling.

111.    John Doe is much happier and less withdrawn and depressed since he began counseling, and Jack and Jane Doe have experienced a repairing and restoration of the family bonds because of SOCE counseling.

112.    Jack and Jane Doe did not just seek SOCE counseling for their son because of his sincere desire to receive such counseling; they also sought such counseling for their son because they, too, have sincerely held religious beliefs that homosexuality is a harmful, immoral, and sinful lifestyle that is prohibited under the fundamental tenets of their faith and the faith of their son.

113.    Jack and Jane Doe have a sincerely held religious belief that they should provide their children the necessary education to understand Sacred Scripture, as well as the teachings of their Catholic Church. They also believe that assisting him in receiving SOCE counseling will help John Doe live consistently with and prioritize his religious beliefs and values above his gender confusion and unwanted same-sex attractions is one aspect of educating him to live virtuously through the fundamental tenets of their faith.

114.    John Doe's current counselor is a licensed clinical social worker in New York, but his counseling does not involve the in-depth analysis and discussion of the underlying causes and background information that many licensed psychologists do in this area.

Complaint for Injunctive and Declaratory Relief - 18

115.   Because his counseling is more prospective oriented, John Doe's counselor informed Plaintiffs that John Doe would likely benefit from the additional counseling of a person who engages in conversations dealing with root causes, background information, and other introspective analysis offered in other **licensed** professional counseling.

116.   John Doe's counselor made his recommendation based on some of the recent discussions he has had with John Doe, and the Does want to continue to make sure their son receives the best counseling from the best counselors on all aspects of those problems that cause him distress.

117.   It was because of that recommendation that Jack and Jane Doe contacted Dr. Ronald Newman, a licensed psychologist in New Jersey, to attempt to engage him for John Doe. Dr. Newman informed them, however, that A3371 prevented any New Jersey licensed psychologist from providing any counseling to John Doe concerning his desire to reduce or eliminate his unwanted same-sex attraactions..

118.   Because of this prohibition, Jack and Jane Doe and their son, John Doe, have no options for receiving SOCE counseling from a **licensed** professional in New Jersey who is educated and trained in the area and has the ability of assisting John Doe with his objectives and goals for counseling.

119.   Because of their experience with the **unlicensed** counselor at the beginning of John Doe's initial psychological struggle with unwanted same-sex attractions and gender confusion, Jack, Jane, and John Doe all desperately seek to receive SOCE counseling from a **licensed** mental health professional but are completely unable to do so in the State of New Jersey.

**COUNT I – VIOLATION OF PLAINTIFFS' FIRST AMENDMENT RIGHT TO RECEIVE INFORMATION**

120.    Plaintiffs reiterate and adopt each and every allegation in the preceding paragraphs numbered 1 through 119.

121.    The First Amendment, as applied to the states by the Fourteenth Amendment, protects an individuals' freedom of speech, and also protects the right to receive information, which is the corollary to the right to freedom of speech.

122.    A3371, on its face and as applied, discriminates against Plaintiffs' First Amendment rights to receive information by limiting the type of counseling Plaintiffs may receive solely on the basis of the content and viewpoint of the message.

123.    A3371's prohibition, on its face and as applied, on mental health providers and counselors from offering or referring clients to someone who offers SOCE counseling as a part of their counseling represents unconstitutional viewpoint discrimination.

124.    A3371, on its face and as applied, authorizes only one viewpoint on SOCE and unwanted same-sex sexual attractions, behaviors, or identity, by forcing the licensed counselors in New Jersey to provide only one viewpoint, thereby prescribing what information and viewpoint Plaintiffs may receive in the counselor's office.

125.    To withstand constitutional scrutiny, restrictions on the fundamental right of Plaintiffs to receive information must be supported by a compelling state interest and must be narrowly tailored to meet that end.

126.    Plaintiffs have sincerely held religious beliefs that shape their desire to receive SOCE counseling and the information that licensed mental health professionals can provide on reducing or eliminating unwanted same-sex attractions, behaviors, and identity.

127.    A3371 prevents Plaintiffs from receiving SOCE counseling from a licensed New Jersey professional.

128.    A3371 is not supported by a compelling state interest.

129.    Even if A3371 were supported by a compelling state interest, it is not narrowly tailored to achieve any compelling government purpose and therefore violates Plaintiffs' fundamental rights to receive information.

130.    Informed consent provisions mandating what must be provided to Plaintiffs and other seeking SOCE counseling would have sufficed to protect against the alleged harm the State is seeking to avoid, and mental health counseling organizations have written letters in the past with similar legislation urging that the legislature adopt informed consent provisions. A copy of the California mental health organizations' letter to the California legislature concerning legislation virtually identical to A3371 is attached as Exhibit B and incorporated herein.

131.    A3371's violation of Plaintiffs' fundamental rights has caused, is causing, and will continue to cause undue and actual hardship and irreparably injury.

132.    Plaintiffs have no adequate remedy at law to correct the continuing deprivation of their most cherished constitutional liberties.

         WHEREFORE, Plaintiffs pray for relief against Defendant as hereinafter set forth in their prayer for relief.

### COUNT II – VIOLATION OF PLAINTIFFS' RIGHT TO THE FREE EXERCISE OF RELIGION

133.    Plaintiffs reiterate and adopt each and every allegation in the preceding paragraphs numbered 1 through 119.

134.    The Free Exercise Clause of the First Amendment to the United States Constitution, as applied to the states by the Fourteenth Amendment, prohibits Defendants from abridging Plaintiffs' right to the free exercise of religion.

135.    Plaintiffs have sincerely held religious beliefs that same-sex sexual attractions, behaviors, or identity are wrong, and they seek to resolve these conflicts between their religious beliefs and their attractions in favor of their religious beliefs.

136.    Jack and Jane Doe also have sincerely held religious beliefs to train up a child in the way he should go, including seeking counsel to help their minor child experiencing significant psychological distress, anxiety, and suicidal thoughts on the subject matter of same-sex attractions, behaviors, or identity from a religious viewpoint that aligns with their religious beliefs and those of their son.

137.    A3371, on its face and as applied, targets Plaintiffs' beliefs and values regarding human nature, gender, ethics, morality, and SOCE counseling, which are informed by the Bible and the teachings of their church and constitute central components of their sincerely held religious beliefs.

138.    A3371 causes them a direct and immediate conflict with their religious beliefs by prohibiting them from receiving counseling from a licensed professional that is consistent with their religious beliefs.

139.    A3371 placed Plaintiffs in an irresolvable conflict between their sincerely held religious beliefs and compliance with the prohibition on SOCE counseling, and forces them to choose between the requirements of their value system or the State-imposed value systems.

140.    A3371 puts substantial pressure on Plaintiffs to violate their sincerely held religious beliefs by ignoring the fundamental tenets of their faith concerning same-sex attractions, behaviors, or identity.

141.   A3371, on its face and as applied, has impermissibly burdened Plaintiffs' sincerely held religious beliefs and compels them to either change those religious beliefs or to act in contradiction to them.

142.   A3371's imposition on Plaintiffs, on its face and as applied, is neither neutral nor generally applicable, but rather specifically and discriminatorily targets the religious speech, beliefs, and viewpoint of Plaintiffs and those individuals who believe change is possible, and thus expressly on its face and as applied constitutes a substantial burden on sincerely held religious beliefs that are contrary to the state-approved viewpoint on same-sex attractions, behavior, or identity.

143.   The State of New Jersey's alleged interest in protecting minors from the so-called harm of SOCE counseling is unsubstantiated and does not constitute a compelling state interest.

144.   No compelling state interest justifies the burdens Defendant has imposed upon Plaintiffs' rights to the free exercise of religion.

145.   Even if A3371's provisions were supported by a compelling state interest, they are not the least restrictive means to accomplish any permissible government purpose A3371 seeks to serve.

146.   On its face and as applied, A3371's violation of Plaintiffs' rights to the free exercise of religion has caused, is causing, and will continue to cause Plaintiffs to suffer undue and actual hardship and irreparable injury.

147.   Plaintiffs have no adequate remedy at law to correct the continuing deprivation of their most cherished constitutional liberties.

WHEREFORE, Plaintiffs respectfully pray for relief against Defendant as hereinafter set forth in their prayer for relief.

**COUNT III – VIOLATION OF PLAINTIFFS' HYBRID RIGHTS TO THE FREE
EXERCISE OF RELIGION AND THE FIRST AND FOURTEENTH AMENDMENT
RIGHT TO RECEIVE INFORMATION AND DIRECT THE UPBRINGING OF THEIR
CHILD**

148.    Plaintiffs reiterate and adopt each and every allegation in the preceding paragraphs numbered 1 through 119.

149.    A3371 violates both Plaintiffs' right to the free exercise of religion and their First Amendment right to receive information, as guaranteed by the First and Fourteenth Amendments to the United States Constitution.

150.    A3371 also violates both the Plaintiffs Jack and Jane Doe's right to the free exercise of religion and their fundamental parental rights, as guaranteed by the First and Fourteenth Amendments to the United States Constitution.

151.    A3371 is not neutral or generally applicable in that it specifically exempts certain forms of SOCE counseling while prohibiting SOCE counseling for those minors who wish to reduce or eliminate their unwanted same-sex attractions, behaviors, or identity.

152.    Plaintiffs have sincerely held religious beliefs instructing them that homosexuality is a sinful and harmful lifestyle that is not in accordance with the teachings of the Holy Bible.

153.    A3371 substantially burdens John Doe's sincerely held religious beliefs by prohibiting him from obtaining SOCE counseling from a licensed professional to assist him in conforming his attractions and behaviors to his sincerely held religious beliefs.

154.    A3371 substantially burdens Jack and Jane Doe's sincerely held religious beliefs by preventing them from raising up their child in the way he should go according to Holy Scripture and preventing them from helping him obtain SOCE counseling from a licensed mental health provider who can assist him with his unwanted same-sex attractions.

155.    There is no compelling government interest sufficient to justify A3371 or Defendant's

enforcement of it against Plaintiffs.

156.     There is no significant government interest sufficient to justify A3371 or Defendant's

enforcement of it against Plaintiffs.

157.     A3371 is not the least restrictive means to accomplish any permissible government

objective sought to be achieved by A3371 or Defendant's enforcement of it.

158.     A3371 is not a narrowly tailored restriction on Plaintiffs' constitutional freedoms.

WHEREFORE, Plaintiffs respectfully pray for relief against Defendant as hereinafter set

forth in their prayer for relief.

### COUNT IV – VIOLATION OF PLAINTIFFS JACK AND JANE DOE'S FUNDAMENTAL PARENTAL RIGHTS UNDER THE FIRST AND FOURTEENTH AMENDMENT

159.     Plaintiffs reiterate and adopt each and every allegation in the preceding paragraphs

numbered 1 through 119.

160.     The First and Fourteenth Amendments to the United States Constitution protect the

fundamental rights of parents to direct the upbringing and education of their children according

to their sincerely held religious beliefs.

161.     To withstand constitutional scrutiny, restrictions on fundamental parental rights must

be supported by a compelling state interest and must be narrowly tailored to meet that end.

162.     Jack and Jane Doe desperately desire that their son receive SOCE counseling to assist

him in conforming him sexual attractions, behaviors, and identity to his and their sincerely held

religious beliefs.

163.     A3371 prevents Jack and Jane Doe from seeking mental health counseling from a

licensed New Jersey professional for their son's unwanted same-sex attractions, behaviors, and

identity and gender confusion that conforms to their sincerely held religious beliefs.

164.     A3371 is not supported by a compelling state interest.

165.     Even if A3371 was supported by a compelling interest, it is not narrowly tailored to achieve any compelling purpose and therefore violates Jack and Jane Doe's fundamental parental rights.

166.     A3371's violation of Jack and Jane Doe's fundamental parental rights has caused, is causing, and will continue to cause them to suffer undue and actual hardship and irreparable injury.

167.     Plaintiffs have no adequate remedy at law to correct the continuing deprivation of their most cherished constitutional liberties.

WHEREFORE, Plaintiffs respectfully pray for relief against Defendant as hereinafter set forth in their prayer for relief.

## PRAYER FOR RELIEF

For all of the foregoing reasons, Plaintiffs pray:

A.     That this Court issue a Preliminary Injunction enjoining Defendant, Defendant's officers, agents, employees, attorneys, and all other persons acting in active concert or participation with him, from enforcing A3371.

B.     That this Court issue a Permanent Injunction enjoining Defendant, Defendant's officers, agents, employees, attorneys, and all other persons acting in active concert or participation with him, from enforcing A3371.

C.     That this Court render a Declaratory Judgment declaring A3371 and Defendant's actions in applying A3371 unconstitutional under the United States Constitution, declaring:

     i.     Defendant violated Plaintiffs' right to freedom of speech by prohibiting them from seeking and receiving information concerning SOCE counseling;

      ii.     Defendant violated Plaintiffs' right to the free exercise of religion by prohibiting Plaintiffs from seeking or receiving information concerning SOCE counseling in accordance with their sincerely held religious beliefs; and

      iii.    Defendant violated Plaintiffs Jack and Jane Doe's fundamental parental rights to direct the upbringing and education of their children.

D.     That this Court adjudge, decree, and declare the rights and other legal relations with the subject matter here in controversy so that such declaration shall have the force and effect of final judgment;

E.     That this Court award Plaintiffs nominal damages for the past violations of their constitutional rights;

F.     That this Court retain jurisdiction of this matter for the purpose of enforcing this Court's order;

G.     That this Court award Plaintiffs the reasonable costs and expenses of this action, including attorney's fees, in accordance with 42 U.S.C. § 1988.

H.     That this Court grant such other and further relief as it deems equitable and just under the circumstances.

Respectfully submitted,

/s/ Demetrios Stratis

      Demetrios Stratis
      New Jersey Bar No. 022391991
      Mathew D. Staver*
      Stephen M. Crampton*
      Daniel J. Schmid*
      Liberty Counsel
      Attorneys for Plaintiffs
      P.O. Box 11108
      Lynchburg, VA 24502
      Tel. 434-592-7000
      Fax: 434-592-7700
      court@LC.org

* Application to appear Pro Hac Vice pending