## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN DOE, by and through JACK DOE and JANE DOE, *et al.*,<br><br>*Plaintiffs*,<br><br>- against -<br><br>CHRISTOPHER J. CHRISTIE, Governor of the State of New Jersey, in his official capacity,<br><br>*Defendants*. | Case No. 13-cv-6629 (FLW) (LHG)<br><br>**CERTIFICATION OF TROY STEVENSON** |

I, Troy Stevenson, being of full age, hereby declare as follows:

1.     I am the Executive Director of Garden State Equality and have held this position since January 21, 2013. In this capacity, I have personal knowledge of the facts set forth herein.

2.     Founded in 2004, Garden State Equality is New Jersey's largest civil rights organization, focusing primarily on advocating for lesbian, gay, bisexual, and transgender ("LGBT") equality within the state. Garden State Equality utilizes a variety of approaches to secure LGBT civil rights in New Jersey. Garden State Equality supports legislation, lobbies legislators and other government officials, utilizes grassroots efforts to develop coalitions and build consensus, and produces public education programs to inform the public. Garden State Equality is dedicated to combating discrimination, harassment, and violence on the basis of sexual orientation and gender identity, and protecting the interests of LGBT people in the State of New Jersey, including youth.

3.     Since Garden State Equality's origination in 2004, the organization has supported and lobbied for the enactment of two-hundred and fifteen (215) at the state, county, and municipal levels, including anti-discrimination and hate crime laws. Garden State Equality also has advocated for equal access to state and federal benefits and for education policy changes.

For example, in January 2011, Governor Christie signed into law the Anti-Bullying Bill of Rights, now codified at N.J.S.A. 18A:37-13 *et seq.*  Garden State Equality supported the passage of this measure in order to protect youth from many types of discrimination in school and to help reduce the incidences of teenage suicide and school violence.

4.     Garden State Equality has over one-hundred and twenty-five thousand (125,000) members, including LGBT youth, some of whom, in the absence of Assembly Bill A3371 ("A3371")/Senate Bill S2278 ("S2278"), might be subject to dangerous sexual orientation change efforts ("SOCE") by state-licensed mental health professionals, whether at the insistence of a parent or guardian, or based on the choice of a licensed mental health professional.  Garden State Equality's membership includes adults who went through SOCE efforts as minors and adults who are parents of LGBT youth and who have an interest in protecting their LGBT children from SOCE.  Furthermore, through its participation in anti-bullying initiatives and in identifying resources for children who require support services to address the negative impact of discrimination against LGBT individuals, Garden State Equality is familiar with the difficulties and stigmatization that many LGBT youth face in New Jersey.

5.     A3371/S2278 seeks to stop state-licensed counseling professional from subjecting minors to the dangerous practices known as "reparative therapy," "conversion therapy," "corrective therapy," and "homosexual cure therapy," which also are known under the umbrella term "sexual orientation change efforts."

6.     Garden State Equality participated in all stages of the legislative process as the lead organization advocating for the passage of A3371/S2278.  Garden State Equality assisted legislators in identifying leading members of the medical, psychiatric, and psychological fields, as well as persons who had experienced SOCE, who could consult with legislators and provide

testimony to the Legislature.  Additionally, Garden State Equality members Mordechai Levovitz, Ryan Kendall, and Joey Kemmerling testified before the Legislature about their experienced with "therapy" involving SOCE, and the extreme psychological trauma it caused them.

7.      Along with several members of GSE, I testified before both houses of the New Jersey Legislature in support of A3371/S2278.  The testimony provided real-life examples of the extreme psychological trauma that SOCE caused.  For example, attached hereto as Exhibits 1 and 2 are true and correct copies of my prepared remarks to the respective State Assembly and State Senate Committees which considered and approved A3371/S2278.

I hereby certify under penalty of perjury that the foregoing statements are true and correct.

Executed on November 15, 2013

Troy Stevenson

3