# IN THE UNITED STATES DISTRICT COURT FOR THE
# DISTRICT OF NEW JERSEY
# TRENTON DIVISION

| | | |
|---|---|---|
| **JOHN DOE**, by and through JACK DOE and JANE DOE, **JACK DOE**, individually and on behalf of his son, JOHN DOE, **JANE DOE**, individually and on behalf of her son JOHN DOE, | ) ) ) ) ) ) | |
| Plaintiffs, | ) | Case No. 3:13-cv-06629-FLW-LHG |
| v. | ) ) | |
| **CHRISTOPHER J. CHRISTIE**, Governor of the State of New Jersey, in his official capacity, | ) ) ) ) | |
| Defendant. | ) | |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO GARDEN STATE EQUALITY'S MOTION TO INTERVENE**

# TABLE OF CONTENTS

**TABLE OF CONTENTS** ....................................................................................................ii

**TABLE OF AUTHORITIES**.............................................................................................ii

**INTRODUCTION**………..................................................................................................1

**ARGUMENT**......................................................................................................................2

**I.**     **GSE CANNOT SATISFY ARTICLE III   REQUIREMENTS**....................................2

      A.     GSE Has Not and Cannot Satisfy an Injury in Fact…………………….......6

      B.     Because GSE Cannot Establish Injury, Any Decision from this Court Will Not Provide Any Redress  ....................................................................................7

**II.**    **GSE DOES NOT SATISFY THE REQUIREMENTS OF PERMISSIVE INTERVENTION**..................................................................................8

      A.     GSE's Interest Are Already Adequately Represented, and Its Contribution Would Be Superfluous…………………………………………..9

      B.     GSE's Motion Is Unduly Prejudicial……………………………………….10

**CONCLUSION**...................................................................................................................12

# TABLE OF AUTHORITIES

**Cases**

*Am. Auto. Ins. Co. v. Murray,* 658 F.3d 311 (3d Cir. 2011)........................................................3

*Arizonans for Official English v. Arizona,* 520 U.S. 43, 64 (1997)................................................5

*Bldg & Const. Trades Dep't, AFL-CIO v. Reich,* 40 F.3d 1275 (D.C. Cir. 1994)..........................3

*City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750 (1988)…..……………………..11

*Clapper v. Amnesty Int'l,* 133 S. Ct. 1138 (2013)...................................................................6, 7

*Delaware Valley Citizens Council for Clean Air v. Pennsylvania,* 674 F.2d 970 (3d Cir. 1982)………………………………………………………………………………10

*Diamond v. Charles,* 476 U.S. 54 (1986).........................................................................4, 5, 6, 7

*Edwards v. Beck,* No. 4:13-cv-00224-SWW (W.D. Ark. June 6, 2013)………………………..11

*Field Day, LLC v. Cnty. of Suffolk*, 463 F.3d 167 (2d Cir. 2006) …………………………....11

*Flying J., Inc. v. Van Holen*, 578 F.3d 569 (7th Cir. 2009)..............................................................3

*Frempong v. Nat'l City Bank of In.*, 452 F. App'x 167 (3d Cir. 2011)...........................................3

*Hollingsworth v. Perry*, 133 S. Ct. 2652 (2013)........................................................................4, 5

*Hoots v. Pennsylvania*, 672 F.2d 1133 (3d Cir. 1982)………………………………………….8, 9

*In re Cmty. Bank of N. Va.*, 418 F.3d 277 (3d Cir. 2005)..............................................................10

*In re Stingfree Tech. Co.*, 427 B.R. 337 (E.D. Penn. 2010)............................................................9

*Janusziewicz v. Sun Shipbuilding & Dry Dock Co.*, 677 F.2d 286 (3d Cir. 1982). ………………2

*King et al. v. Christie et al.*, No. 13-5038, 2013 WL 5970343 (D.N.J. Nov. 8, 2013).....................2

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)............................................................2, 3, 6, 7

*Marbury v. Madison*, 5 U.S. 137 (1803)..........................................................................................5

*Mausolf v. Babbit*, 85 F.3d 1295 (8th Cir. 1996).................................................................3, 5, 8, 9

*Pennsylvania v. Rizzo*, 530 F.2d 501 (3d Cir. 1976)………………………………..…………10

*Seminole Tribe of Fl. v. Florida*, 517 U.S. 44 (1996)......................................................................5

*United States v. 36.96 Acres of Land, More or Less, Situated in LaPorte Cnty.*,
754 F.2d 855 (7th Cir. 1985).............................................................................................................3

*Valley Forge Christian Coll. v. Am. United for Separation of Church & State, Inc.*,
454 U.S. 464, 471 (1982)..............................................................................................................2, 5

*Virginia v. Westinghouse Elec. Corp.*, 542 F.2d 214, 216 (4th Cir. 1976)....................................10

**Statutes**

Fed. R. Civ. P. 24............................................................................................................................8

U.S. Const. art. III, § 2, cl. 1.............................................................................................................2

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO GARDEN STATE EQUALITY'S MOTION TO INTERVENE**

COME NOW Plaintiffs, by and through counsel, and file this Memorandum in Opposition to Garden State Equality's motion to intervene in the present litigation.

**INTRODUCTION**

On November 11, 2013, Plaintiffs John Doe, by and through his parents, Jack Doe and Jane Doe, both individually and on behalf of John Doe, filed their Complaint challenging New Jersey Statute § 45:1-55 (hereinafter "A3371") as a violation of their First Amendment right to receive information and as a violation of their First Amendment right to the free exercise of religion, their hybrid rights under both the First and Fourteenth Amendments, and their Fourteenth Amendment right to direct the upbringing and education of their child. (Dkt. 1, Compl. ¶¶ 120-67). On the same day, Plaintiffs also filed a Motion for Preliminary Injunction seeking to enjoin Defendant Governor Christie from enforcing A3371 in any manner that violates Plaintiffs' constitutional rights. (Dkt. 4).

On November 18, 2013, Garden State Equality ("GSE") filed its motion to intervene, which alleged that its participation was necessary to protect its interests as the primary sponsor of the legislation, its alleged expertise in the "consensus" surrounding sexual orientation change efforts ("SOCE") counseling, and to provide alternative viewpoints concerning Plaintiffs' claims. (Dkt. 9-2, Garden State Equality, "Intervention Memo" at 1-2). GSE's alleged interests, however, have nothing to do with Plaintiffs' free exercise of religion claims, Plaintiffs' fundamental right to direct the upbringing and education of their child, or John Doe's fundamental right to receive information. GSE's alleged interests in protecting its membership and other minors potentially subjected to this purportedly harmful practice has little bearing on

this Court's adjudication of Plaintiffs' claims. GSE's motion to intervene should therefore be denied.

## ARGUMENT

GSE should not be granted intervention because it has not and cannot satisfy the requirements of Article III standing, which is required of proposed intervenors in a federal lawsuit.[1] GSE cannot establish a concrete and particularized injury in fact. GSE also failed to establish that this Court's order would provide any redress to its alleged injury. Additionally, GSE cannot satisfy the requirements of permissive intervention. GSE's intervention is wholly unnecessary, as the State more than adequately represents its interests. Also, GSE's intervention would unduly prejudice Plaintiffs in the adjudication of their claims. Therefore, GSE should not have been permitted to intervene.

I.   **GSE CANNOT SATSIFY ARTICLE III'S STANDING REQUIREMENTS.**

Article III limits the jurisdiction of federal courts to "cases" and "controversies" that arise under the Constitution, laws, and treaties of the United States. U.S. Const. art. III, § 2, cl. 1. This limitation requires that all parties in federal court must have standing. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "The requirements of Art. III are not satisfied merely because a party requests a court of the United States to declare its legal rights, and has couched that request for forms of relief historically associated with courts of law . . . ." *Valley Forge Christian Coll. v. Am. United for Separation of Church & State, Inc.*, 454 U.S. 464, 471 (1982). "[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan*, 504 U.S. at 560. To establish standing, a party

---

[1] Plaintiffs recognize that this Court has rejected standing as a requirement of intervention in a case also challenging A3371. *King et al. v. Christie et al.*, No. 13-5038, 2013 WL 5970343, *5-7 (D.N.J. Nov. 8, 2013). Nevertheless, Plaintiffs maintain that the better reasoned cases require Article III standing, and hereby assert such a claim to preserve their rights on appeal.

must establish an injury in fact, that it is fairly traceable to the challenged law, and that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id*. at 560-61.

Although neither the Supreme Court nor the Third Circuit has yet definitively ruled on the issue, *Am. Auto. Ins. Co. v. Murray*, 658 F.3d 311, 318 n.4 (3d Cir. 2011), the better reasoned cases hold that all parties seeking to litigate in federal court, including intervenors, need Article III standing. *See Mausolf v. Babbit*, 85 F.3d 1295, 1300 (8th Cir. 1996) ("[T]he Constitution requires that prospective intervenors have Article III standing to litigate their claims in federal court."); *Bldg & Const. Trades Dep't, AFL-CIO v. Reich*, 40 F.3d 1275, 1282 (D.C. Cir. 1994) ("[B]ecause an intervenor participates on equal footing with the original parties to a suit a movant for leave to intervene . . . must satisfy the same Article III requirements as original parties."). Indeed, some courts have stated that "[t]he interest of a proposed intervenor . . . must be **greater** than the interest sufficient to satisfy the standing requirement." *United States v. 36.96 Acres of Land, More or Less, Situated in LaPorte Cnty*., 754 F.2d 855, 859 (7th Cir. 1985) (emphasis added); *Flying J., Inc. v. Van Holen*, 578 F.3d 569, 571 (7th Cir. 2009) (the interest required by Article III is not enough by itself to allow a person to intervene in a federal suit and thus become a party to it. There must be more."); *see also Mausolf*, 85 F.3d at 1299. The Third Circuit has also required proposed intervenors to show standing. *See Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 777 (3d Cir. 1994) ("we are obliged to consider whether the Newspapers have standing to intervene"); *Frempong v. Nat'l City Bank of In.*, 452 F. App'x 167, 172 (3d Cir. 2011) (stating "the analysis of the issue of standing is . . . different from the analysis of the issue in intervention" but noting that "the facts underlying Frempong's claim that he has standing to bring his own civil rights action, and those that underlie his previous claim of a right

3

to intervene in his wife's civil rights action are the same, and thus the result is the same: Frempong is out of court.").

The Supreme Court's recent ruling in *Hollingsworth v. Perry*, 133 S. Ct. 2652 (2013) emphasized that under Article III of the Constitution, one "essential aspect" of the Cases or Controversies limitation on "the judicial power of federal courts" is that "**any** person invoking the power of a federal court must demonstrate standing to do so." *Id*. at 2661 (emphasis added). "In other words, for a federal court to have authority under the Constitution to settle a dispute, the party before it **must** seek a remedy for a **personal** and **tangible harm**. 'The presence of a disagreement, however sharp and acrimonious it may be, is insufficient by itself to meet Art. III's requirements.'" *Id*. (quoting *Diamond v. Charles*, 476 U.S. 54, 62 (1986)) (emphasis added).

In *Hollingsworth*, plaintiffs filed suit against various state officials, challenging the constitutionality of the California marriage amendment known as Proposition 8. A group of citizens who had been proponents of the amendment, intervened as defendants. *Id*. at 2660. But the state officials refused to defend the law, and after the trial court struck the law as unconstitutional, intervenors appealed. The Ninth Circuit certified the issue of their standing to defend the law to the California Supreme Court, reasoning that the question of standing to defend a state law was one of state law. The California Supreme Court ruled that they did have standing, and the Ninth Circuit accordingly went on to decide the merits. *Id*. at 2660-61.

On certiorari to the Supreme Court, the High Court held that the question of standing to sue or maintain a suit in federal court is one of federal law, not state law. *Id*. at 2661. The Court ultimately dismissed the appeal because the intervenors were unable to establish independent standing because they could not demonstrate any "personal stake" in defending the law's

4

enforcement despite their role as proponents of the initiative before it was passed. *Id*. at 2663. "Standing 'must be met by persons seeking appellate review, just as it must be met by persons appearing in courts of first instance.'" *Id*. at 2662 (quoting *Arizonans for Official English v. Arizona,* 520 U.S. 43, 64 (1997)). Because intervenors did not have standing, the Court did not have jurisdiction to hear the appeal.

This rationale, rooted in the constitutional limits on federal jurisdiction, has been reiterated by other federal courts: "judicial economy and the Rules of Civil Procedure notwithstanding, Congress cannot circumvent Article III's limits on judicial power." *Mausolf*, 85 F.3d at 1300 (citing *Seminole Tribe of Fl. v. Florida*, 517 U.S. 44 (1996); *Valley Forge*, 457 U.S. at 471-75). Indeed, "**Congress could no more use Rule 24 to abrogate Article III standing requirements than it could expand the Supreme Court's original jurisdiction by statute**." *Id*. (citing *Marbury v. Madison*, 5 U.S. 137 (1803)). By parity of reason, a proposed intervenor lacking Article III standing should not be permitted to enter a federal lawsuit. "[A]n Article III case or controversy, once joined by intervenors who lack standing, is—put bluntly—no longer an Article III case or controversy." *Id*. Moreover, '[a]n Article III case or controversy is one where **all parties have standing, and a would-be intervenor, because he seeks to participate as a party, must have standing as well**." *Id*. (emphasis added). It is axiomatic that "those who do not possess Article III standing may not litigate as suitors in the courts of the United States." *Valley Forge*, 454 U.S. 475-76. As the Supreme Court stated in *Hollingsworth*, "Article III standing 'is not to be placed in the hands of concerned bystanders, who will use it simply as a vehicle for the vindication of value interests.'" 133 S. Ct. at 2663 (quoting *Diamond*, 476 U.S. at 62 (internal quotation marks omitted)). GSE has not and cannot satisfy the requirements of Article III and therefore should not have been permitted to intervene.

### A.     GSE Has Not and Cannot Establish an Injury in Fact.

"Article III requires more than a desire to vindicate a value interest . . . It requires an injury in fact that distinguishes a person with a direct stake in the outcome of the litigation—even though small—from a person with a mere interest in the problem." *Diamond v. Charles*, 476 U.S. 54, 66-67 (1986). "[A] private party whose own conduct is neither implicated nor threatened by a [challenged] statute has no judicially cognizable interest in the statute's defense." *Id.* at 56. Indeed, "[b]ecause the State alone is entitled to create a legal code, **only the State has the kind of direct stake in defending the standards embodied in that code**." *Id.* at 65 (emphasis added) (citations omitted).

As the Supreme Court held in *Hollingsworth* that the proponents of the law there did not have standing to defend its constitutionality so here mere supporters of a law passed by the legislature have no standing to defend its constitutionality in federal court. GSE therefore does not have standing to defend A3371.

An injury in fact sufficient for Article III standing must be "an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (citations omitted). Here, GSE has not and cannot establish a concrete and particularized injury. GSE's sole claim for having an interest in this litigation is that it supported passage of the law and has members opposed to the law. (Intervention Brief at 11). GSE specifically states that it desires to intervene to protect minors "who are at risk of being subjected to these harmful practices." (*Id.* at 1). But this argument must fail, as it does not rise to the level of certainty mandated by Article III. "We have repeatedly reiterated that the threatened injury must be *certainly* impending to constitute injury in fact, and that allegations of *possible* future injury are not sufficient." *Clapper v. Amnesty Int'l*, 133 S. Ct.

6

1138, 1147 (2013) (emphasis original) (internal quotation marks omitted). Indeed, the Court has "been reluctant to endorse standing theories that require guesswork as to how independent decisionmakers will exercise their judgment." *Id*. at 1149.

Here, however, GSE's entire basis for intervention is to protect a **speculative** group of **potential** future members who **might** receive SOCE counseling. "[U]nadorned speculation will not suffice to invoke the federal power." *Diamond*, 476 U.S. at 66. GSE's alleged interest and injury is essentially the same argument put forward by the physician in *Diamond*, which the Court squarely rejected. "Although Diamond's allegation may be cloaked in the nomenclature of a special professional interest, it is simply the expression of a desire that the [law] as written be obeyed." *Id*. at 66. GSE's claim should meet the same fate. Moreover, GSE's conduct is neither implicated nor threatened by the law, which makes its participation merely a value interest without concrete stake in the litigation. *Id*. at 67 ("Diamond has an interest but no direct stake" in the outcome of the case). GSE's "abstract concern does not substitute for the concrete injury required by Article III." *Id*. It is merely seeking to see a law upheld by the State, which is insufficient as a matter of law to justify Article III standing. GSE's motion to intervene is therefore not well taken and should be denied.

> **B.  Because GSE Cannot Establish Injury, Any Decision from this Court Will Not Provide Any Redress.**

In addition to the requirement that GSE establish a concrete and particularized injury, it is required to satisfy the element of redressability. "[I]t must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 561. Because GSE cannot show that it has a concrete injury, no matter what determination is made by this Court, it cannot obtain the relief it seeks. GSE's potential for likely redress of injuries is not merely speculative in this case, which itself would be sufficient to defeat its claim, but it is

**impossible** for its purported injuries to be redressed, as there is **no injury**. GSE does not have members that engage in this counseling or whose practice would somehow be restricted or impacted by this law. Nor is its conduct or interest directly impacted by the law. As such, GSE has not and indeed cannot establish the third element of the irreducible constitutional minimum requirements of standing that the decision provide redress.

**II.     GSE DOES NOT SATISFY THE REQUIREMENTS OF INTERVENTION.**

Federal Rule of Civil Procedure 24(b) states that "[o]n timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). Additionally, "[i]n exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

In determining whether the intervention would result in undue delay or prejudice, the Court should consider whether the proposed intervenor's contributions would be "superfluous" and whether their interests are already adequately represented. *Hoots v. Pennsylvania*, 672 F.2d 1133, 1136 (3d Cir. 1982). Here, GSE's contributions would at best be superfluous, because GSE's interests are already adequately represented. Indeed, GSE does not even attempt to show that the State's representation is somehow inadequate. Instead, it suggests that because it lobbied for passage of A3371 and some of its members testified in its favor its "deep understanding" of the "consensus" of the organizations that support the Act "would assist the Court" in "efficiently" adjudicating the matter. (Intervention Brief at 1). In fact, GSE's intervention would add nothing to the State's already-adequate representation and would instead distract from the essence of the case by introducing irrelevant and unnecessary factual material that would undoubtedly be disputed -- just as they did in the previous case of *King v. Christie*. This is

8

particularly true where, as here, the proposed intervenor's alleged interest in the litigation is irrelevant to the Plaintiffs' claims.

Moreover, GSE's proposed intervention would impose substantial and undue prejudice on Plaintiffs' adjudication of their rights by having to respond to lengthy materials submitted by a party with no standing. GSE's interest has no bearing on the free exercise and parental rights claims of private individuals wholly unrelated to the mission or membership of GSE. That GSE seeks to address some hypothetical interest of its speculative future members does not, in any way, grant them sufficient interest in the litigation. The motion should therefore be denied. "While Rule 24 promotes judicial economy by facilitating, where constitutionally permissible, the participation of interested parties, the fact remains that **a federal case is a limited affair, and not everyone with an opinion is invited to attend**." *Mausolf v. Babbitt*, 85 F.3d 1295, 1301 (8th Cir. 1996) (emphasis added).

### A. GSE's Interests are Already Adequately Represented, and Its Contribution Would be Superfluous at Best.

As a threshold matter, GSE's intervention would add nothing to the State's already-adequate representation, and would instead seek to introduce irrelevant and unnecessary factual matters that would detract from the analysis and determination of the legal issues presented by this case. When "the interests of the application in every manner match those of an existing party and the party's representation is deemed adequate, the district court is well within its discretion in deciding that the applicant's contributions to the proceedings would be superfluous and that any resulting delay would be undue." *Hoots v. Pennsylvania*, 672 F.2d 1133, 1135-36 (3d Cir. 1982); *see also In re Stingfree Tech. Co.*, 427 B.R. 337, 349-50 (E.D. Penn. 2010) (denying permissive intervention because the proposed intervenor's interest were presumed adequate and that "its contributions to the proceedings would be superfluous").

9

GSE's interests match those of the State Defendants in every way. The State's interests are in upholding A3371 as constitutional, which is identical to GSE's overall objective in seeking to intervene. "When the party seeking intervention has the same ultimate objective as a party to the suit, a presumption arises that its interests are adequately represented." *In re Cmty. Bank of N. Va.*, 418 F.3d 277, 315 (3d Cir. 2005) (quoting *Virginia v. Westinghouse Elec. Corp.*, 542 F.2d 214, 216 (4th Cir. 1976)). Therefore, the State is presumed to adequately represent the interest of those seeking to uphold its laws.

"Furthermore, a presumption of adequate representation generally arises when the representative is the governmental body or officer charged by law with representing the interest." *Pennsylvania v. Rizzo*, 530 F.2d 501, 505 (3d Cir. 1976); *see also Delaware Valley Citizens Council for Clean Air v. Pennsylvania*, 674 F.2d 970, 973 (3d Cir. 1982) ("A party charged by law with representing the interests of the absent party will usually be deemed adequate to represent the absentee."). Indeed, "[w]here official policies and practices are challenged, it seems unlikely that anyone could be better situated to defend than the governmental department involved." *Id*. "The burden is on the proposed intervenor to show that its interests are not adequately represented." *Delaware Valley*, 674 F.2d at 974. GSE has not established that the State cannot adequately represent the interest of those supporting A3371. "[I]nadequate representation would not be established ipso facto" merely because of proposed intervenor's disagreements concerning litigation strategies, stipulations, or potential outcomes based on the government's representation *Id*.

### B. GSE's Intervention would be Unduly Prejudicial.

The Eastern District of Arkansas recently considered this precise type of situation and found that a proposed intervention at this stage of the proceedings in an expedited matter was

substantially prejudicial and should be rejected out of hand. *See Edwards v. Beck*, No. 4:13-cv-00224-SWW (W.D. Ark. June 6, 2013) (copy attached). There, the court found that the urgent nature of the proceedings and what it deemed an undue risk of expense and delay that would have substantially prejudiced the plaintiffs in the proceedings mandated that the proposed intervenor's motion be denied. The Court should do likewise here. The urgency of this matter and the substantial increase in costs and burden on Plaintiffs to respond to and address voluminous pleadings is substantially prejudicial and should be denied.

Moreover, the undue prejudice to Plaintiffs is palpable, especially given the irrelevant nature of GSE's interest in this litigation. GSE's alleged interests in protecting its minor members from SOCE counseling has no relevance to John Doe's private claims to receive such information and counseling, especially when he desperately wants such counseling and adamantly rejects any notion that such counseling is harmful. GSE's alleged interest is also irrelevant to Jack and Jane Doe's vindication of their fundamental right to direct the upbringing of their child. Additionally, GSE's alleged interest certainly has no bearing on Plaintiffs' right to exercise their religion free from government, or GSE, interference.

The legal issues in this case are narrow and concrete. GSE readily admits that it intends to "significantly contribute to the development of the record" and include irrelevant facts that the parties have agreed are unnecessary and irrelevant to the adjudication of this pure question of law. (Intervention Brief at 11). Indeed, "facial challenges by their nature are not dependent on the facts surrounding [the particular statute]." *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 770 n.11 (1988); *see also Field Day, LLC v. Cnty. of Suffolk*, 463 F.3d 167, 174 (2d Cir. 2006) ("A facial challenge to a statute considers only the text of the statute itself, not its application to the particular circumstances of an individual.").

Moreover, Plaintiffs are seeking urgent relief to prevent the continuation of the substantial and irreparable harm they are incurring by virtue of the fact that the law is currently in effect, thereby prohibiting Plaintiffs from continuing to receive the counseling that has so greatly benefitted John Doe and worked tremendous repair to the Doe family.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that Garden State Equality's Motion to Intervene be denied.

Respectfully submitted,

/s/ Demetrios Stratis
Demetrios Stratis
New Jersey Bar No. 022391991
Mathew D. Staver*
Stephen M. Crampton*
Daniel J. Schmid*
Liberty Counsel
Attorneys for Plaintiffs
P.O. Box 11108
Lynchburg, VA 24502
Tel. 434-592-7000
Fax: 434-592-7700
court@LC.org

* Application to appear Pro Hac Vice pending

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was filed electronically with the court on December 2, 2013. Service will be effectuated by the Court's electronic notification system upon all counsel of record.

/s/ Demetrios Stratis
Demetrios Stratis
New Jersey Bar No. 022391991