# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN DOE, by and through JACK DOE and JANE DOE, *et al.*, | Civil Action |
| Plaintiffs, | Case No. 13-cv-6629 (FLW) (LHG) |
| - against - | Hon. Freda L. Wolfson, U.S.D.J. |
| CHRISTOPHER J. CHRISTIE, Governor of the State of New Jersey, in his official capacity, | Hon. Lois H. Goodman, U.S.M.J. |
| Defendant. | |

## GARDEN STATE EQUALITY'S REPLY IN FURTHER SUPPORT OF ITS MOTION TO INTERVENE AS PARTY-DEFENDANT

| | | |
|---|---|---|
| Michael Gluck | Frank Holozubiec | Shannon P. Minter |
| Andrew Bayer | David S. Flugman | Amy Whelan |
| GluckWalrath LLP | Brett J. Broadwater | Christopher F. Stoll |
| 428 River View Plaza | Shireen A. Barday | *Pro hac vice applications pending* |
| Trenton, NJ 08611 | Andrew C. Orr | NATIONAL CENTER FOR LESBIAN RIGHTS |
| Telephone:  (609) 278-3900 | *Pro hac vice applications pending* | 870 Market Street, Suite 370 |
| Facsimile:   (609) 278-3901 | KIRKLAND & ELLIS LLP | San Francisco, CA 94102 |
| | 601 Lexington Avenue | Telephone:  (415) 392-6257 |
| | New York, NY 10022 | Facsimile:   (415) 392-8442 |
| | Telephone:  (212) 446-4800 | |
| | Facsimile:   (212) 446-4900 | |

-- and --

Andrew J. Welz
  *Pro hac vice application pending*
KIRKLAND & ELLIS LLP
655 Fifteenth Street, NW
Washington, D.C. 20005
Telephone:  (202) 879-5000
Facsimile:   (202) 879-5200

*Attorneys for Proposed Intervenor-Defendant Garden State Equality*

## TABLE OF CONTENTS

                                      **Page**

I.  THERE IS NO REQUIREMENT THAT PARTIES SEEKING TO INTERVENE AS PARTY-DEFENDANTS ESTABLISH ARTICLE III STANDING ..................................................................................................2

II.  GARDEN STATE EQUALITY HAS ARTICLE III STANDING ..............................5

III.  INTERVENTION BY GARDEN STATE EQUALITY IS APPROPRIATE AND WILL ASSIST THE COURT IN FAIRLY AND EFFICIENTLY ADJUDICATING THE PARTIES' CLAIMS ..................................................................6

**CONCLUSION** ........................................................................................................................8

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Am. Auto. Ins. Co. v. Murray*,
  658 F.3d 311 (3rd Cir. 2011) ............................................................................................... 2

*Appleton v. Comm'r*,
  430 F. App'x. 135 (3d Cir. 2011) ....................................................................................... 7

*Arlington Heights v. Metro. Housing Dev. Corp.*,
  429 U.S. 252 (1977) ............................................................................................................ 3

*Bldg. & Constr. Trades Dep't, AFL-CIO v. Reich*,
  40 F.3d 1275 (D.C. Cir. 1994) ........................................................................................... 4

*Chiles v. Thornburgh*,
  865 F.2d 1197 (11th Cir. 1989) ......................................................................................... 5

*Dep't of Commerce v. U.S. House of Representatives*,
  525 U.S. 316 (1999) ............................................................................................................ 3

*Diamond v. Charles*,
  476 U.S. 54 (1986) ..................................................................................................... 2, 3, 4

*Director, Office of Workers' Comp. Programs, U.S. Dep't of Labor v. Perini N. River Assocs.*,
  459 U.S. 297 (1983) ............................................................................................................ 3

*Flying J, Inc. v. J.B. Van Hollen*,
  578 F.3d 569 (7th Cir. 2009) ............................................................................................. 4

*Frempong v. Nat'l City Bank of Ind.*,
  452 F. App'x 167 (3d Cir. 2011) ....................................................................................... 4

*Hunt v. Wash. State Apple Adver. Comm'n*,
  432 U.S. 333 (1977) ............................................................................................................ 5

*King v. Christie*,
  No. 13-5038, 2013 WL 5970343 (D.N.J. Nov. 8, 2013) ......................................... passim

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ................................................................................................... 3, 4, 6

*Mausolf v. Babbitt*,
  85 F.3d 1295 (8th Cir. 1996) ......................................................................................... 2, 4

*N.C.A.A. v. Governor of N.J.*,
  520 F. App'x 61 (3d Cir. 2013) .................................................................................... 7

*Pansy v. Boropugh of Stroudsburg*,
  23 F.3d 772 (3d Cir. 1994) ........................................................................................... 4

*Pickup v. Brown*,
  No. 12-2497, 2012 U.S. Dist. LEXIS 172027 (E.D. Cal. Dec. 4, 2012) ..................... 7

*Roe v. Wade*,
  410 U.S. 113 (1973) .................................................................................................. 5, 6

*Ruiz v. Estelle*,
  161 F.3d 814 (5th Cir. 1998) ........................................................................................ 4

*Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*,
  547 U.S. 47 (2006) ........................................................................................................ 5

*Sosna v. Iowa*,
  419 U.S. 393 (1975) ..................................................................................................... 6

*United States v. 36.96 Acres of Land, More or Less, Situated in LaPorte Cnty.*,
  754 F.2d 855 (7th Cir. 2009) ........................................................................................ 4

*Valley Forge Christian Coll. v. Am. United for Separation of Church & State, Inc.*,
  54 U.S. 464 (1982) ....................................................................................................... 4

**OTHER AUTHORITIES**

7C Wright, Miller, and Kane, Federal Practice and Procedure: Civil 2d § 1917, at 457 (2d
  ed. 1986) ....................................................................................................................... 5

**RULES**

Fed. R. Civ. P. 24 .............................................................................................................. 6

Fed. R. Civ. P. 24(a)(2) ..................................................................................................... 2

Fed. R. Civ. P. 24(b) ..................................................................................................... 1, 6

In *King v. Christie*, a lawsuit decided by this Court involving nearly identical issues as those presented here, this Court granted Garden State Equality's motion to intervene, finding that Garden State Equality satisfied all of the factors set forth in Federal Rule of Civil Procedure 24(b) and that Garden State Equality's participation would provide a "helpful, alternative viewpoint from the vantage of some persons who have undergone SOCE treatment or are potential patients of treatment that will aid the court in resolving plaintiffs' claims fully and fairly." *King v. Christie*, -- F. Supp. 2d --, Civil Action No. 13-5038, 2013 WL 5970343, *5-*7 (D.N.J. Nov. 8, 2013). Plaintiffs, who are represented by the same attorneys as the *King* plaintiffs, raise the same arguments in opposition to Garden State Equality's intervention motion in this case that the Court rejected in the *King* litigation. The Court should reject those arguments once again here. *Id*.

***First***, the law of this Circuit provides no support for Plaintiffs' argument that Garden State Equality must independently establish standing in order to intervene as a party *defendant* in this litigation. Plaintiffs' brief fundamentally misconstrues the requirements of Article III; indeed, the cases they cite make clear that there is no need for a party seeking to intervene as a party defendant to establish Article III standing. (*See* Section I, *infra*.) Nonetheless, even if there were such a requirement, Garden State Equality easily satisfies constitutional standing requirements as its members have suffered, and absent A3371 will continue to suffer, an injury in fact that will be directly redressed by a ruling from the Court upholding the statute against Plaintiffs' constitutional challenge. (*See* Section II, *infra*.)

***Second***, Garden State Equality readily satisfies the requirements of Federal Rule of Civil Procedure 24(b) to intervene in this case. As was the case in *King*, Garden State Equality filed a timely motion, shares a commonality of interest with Defendant, and will not cause delay or

1

prejudice to the parties' rights.  2013 WL 5970343, at *5-*7.  Because Garden State Equality's participation will assist the court in fairly and efficiently adjudicating the parties' claims, the Court should grant its motion to intervene.  (*See* Section III, *infra*.)

I.  **THERE IS NO REQUIREMENT THAT PARTIES SEEKING TO INTERVENE AS PARTY-DEFENDANTS ESTABLISH ARTICLE III STANDING**

In *King*, this Court held that proposed defendant intervenors, like Garden State Equality, "need not satisfy standing requirements in order to intervene."  2013 WL 5970343, at *6.  In *King*, the Court rejected the same argument advanced here by Plaintiffs that an intervenor without independent Article III standing "destroys" an Article III case or controversy, irrespective of whether the original parties have standing.  *Id*. (citing *Mausolf v. Babbitt*, 85 F.3d 1295, 1300 (8th Cir. 1996)); *see also* Pls.' Opp. at 5.  Recognizing that neither the Supreme Court nor the Third Circuit has held that a proposed intervenor is required to independently establish its own standing, this Court in *King* adopted the "majority view" that where there already "is a case or controversy before the court, it is not necessary that an intervenor have independent standing."  2013 WL 5970343, at *7; *see also Diamond v. Charles*, 476 U.S. 54, 68-69 (1986) (noting that it "need not decide today whether a party seeking to intervene before a District Court must satisfy not only the requirements of Rule 24(a)(2), but also the requirements of Article III," and only reaching the question of whether the intervenor appellant had standing because the original state defendant decided not to appeal an adverse decision at the district court level); *see also Am. Auto. Ins. Co. v. Murray*, 658 F.3d 311, 318 n.4 (3rd Cir. 2011) (noting that "neither this Court nor the Supreme Court has determined whether a potential intervenor must even have Article III standing" and finding that it "need not today resolve the issue").  This view is consonant with the view of the Second, Fifth, Sixth, Ninth, and Eleventh Circuits and has been

2

adopted by at least three district courts in the Third Circuit. *See King*, 2013 WL 5970343, at *5-*6 (collecting cases).

This Court's holdings on standing in *King* were firmly rooted in Supreme Court and Third Circuit precedent and should be applied with equal force here. It is well established that Article III requires that only justiciable "cases" and "controversies" may be maintained in a federal court, and that the doctrine of standing, which includes the elements of injury in fact, causality, and redressability, has been developed to distinguish which disputes a federal court can hear. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-61 (1992).

While the Supreme Court has not specifically ruled on the question of whether an intervenor needs to independently satisfy Article III standing, the Supreme Court did, in *Diamond*, implicitly acknowledge that where the original defendant to a lawsuit seeks appellate review of an adverse decision, an intervening defendant would be entitled to seek review as well, irrespective of whether the intervenor independently satisfies Article III standing. *Diamond*, 476 U.S. at 64. That acknowledgment is consistent with federal courts' longstanding practice not to independently verify whether additional parties satisfy Article III standing where it is clear that at least one of the parties seeking to invoke federal jurisdiction has standing. *See, e.g., Dir., Office of Workers' Comp. Programs, U.S. Dep't of Labor v. Perini N. River Assocs.*, 459 U.S. 297, 305 (1983) (noting that the presence of one party with standing "assures that an admittedly justiciable controversy is now before the Court"); *see also Dep't of Commerce v. U.S. House of Representatives*, 525 U.S. 316, 330 (1999) (same); *Village of Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252, 263-64 & n.9 (1977). Taken together, these precedents establish that the only time an intervenor, like Garden State Equality, would need to establish standing is where it is the sole party seeking to invoke federal jurisdiction, either as a sole

plaintiff or as a sole appellant. There is no constitutional requirement that an intervenor must independently establish standing to participate as a party defendant in an existing dispute, like the one between Plaintiffs and the State Defendants, that undeniably constitutes a "case or controversy" under Article III.

The cases Plaintiffs cite do not stand for the proposition that intervenors seeking to join a lawsuit as party defendants where the original parties have Article III standing must establish such standing themselves.[1] *Hollingsworth*, *Diamond*, *Flying J*, and *Pansy* are all cases where a proposed intervenor was the sole party seeking to invoke federal jurisdiction, either as an appellant or as a plaintiff. *See Hollingsworth*, 133 S. Ct. at 2661; *Diamond*, 476 U.S. at 64; *Flying J, Inc. v. J.B. Van Hollen*, 578 F.3d 569, 570-71 (7th Cir. 2009); *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 775 (3d Cir. 1994).[2] Indeed, *Hollingsworth* illustrates that an intervenor defendant arguing in defense of a state law need not establish Article III standing in order to be permitted to participate in trial court proceedings. In *Hollingsworth*, the proponents of the California ballot initiative at issue sought and were granted the right to intervene in the district court in order to defend the state measure. Although the Supreme Court held that the

---

[1] *Lujan*, *Valley Forge Christian College*, *Frempong*, and *36.96 Acres of Land*, are not intervenor cases at all, and merely recite the well-known requirements for Article III standing for parties filing a case initially. *Lujan*, 504 U.S. at 560; *Valley Forge Christian Coll. v. Am. United for Separation of Church & State, Inc.*, 454 U.S. 464, 471 (1982); *Frempong v. Nat'l City Bank of Ind.*, 452 F. App'x 167, 172 (3d Cir. 2011); *United States v. 36.96 Acres of Land, More or Less, Situated in LaPorte Cnty.*, 754 F.2d 855, 859 (7th Cir. 2009).

[2] In both *Mausolf v. Babbitt*, 85 F.3d 1295 (8th Cir. 1996), and *Bldg. & Constr. Trades Dep't, AFL-CIO v. Reich*, 40 F.3d 1275 (D.C. Cir. 1994), the intervenors were seeking to invoke federal jurisdiction as party appellants, thus distinguishing those cases from this one. *Mausolf*, 85 F.3d at 1297; *Bldg. & Constr. Trades*, 40 F.3d at 1282. The Fifth Circuit, examining the issue in depth, has rejected the requirement in these cases that intervenors must establish Article III standing as inconsistent with the findings of most courts of appeals and Supreme Court doctrine that "Article III does not require each and every party in a case to have [Article III] standing." *Ruiz v. Estelle*, 161 F.3d 814, 831-33 (5th Cir. 1998).

4

initiative proponents lacked Article III standing to appeal a district court ruling striking down the state measure on their own, the Supreme Court did not disturb the district court ruling, *see* 133 S. Ct. at 2668, and did not question the propriety of the intervenors' participation in the case as defendants at the district court level. *See id.* If the lack of Article III standing of the intervenors in *Hollingsworth* was no hindrance to their participation at the district court level in defense of a state measure, then Garden State Equality certainly does not need to establish Article III standing here.[3]

## II. GARDEN STATE EQUALITY HAS ARTICLE III STANDING

Even if Garden State Equality were required to establish Article III standing, it has done so here. As discussed in its opening brief, Garden State Equality has associational standing based on the interests of its members. Br. at 10-13; *see also Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*, 547 U.S. 47, 53 n.2 (2006); *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977). Garden State Equality's members include LGBT youth and parents of LGBT youth, who are among the intended beneficiaries of A3371 and who would be directly harmed if the statute were struck down. Unlike the *Hollingsworth* intervenors, whom the Supreme Court held possessed no "personal stake" that was "distinguishable from the general interest of every citizen of California," *Hollingsworth*, 133 S. Ct at 2663, Garden State Equality's members have a particular, concrete interest in the constitutionality of A3371. *See*

---

[3] Additionally, and as the Court held in *King*, "imposing standing [requirements] on an intervenor would impinge on the purposes of permissive intervention," which is "to promote the efficient and orderly use of judicial resources by allowing persons to participate in the lawsuit to protect their interests or vindicate their rights." 2013 WL 5970343, at *7. Indeed, as the Court noted, Rule 24, which authorizes intervention, "presumes that a justiciable case or controversy already exists before the court." *Id*. (citing *Chiles v. Thornburgh*, 865 F.2d 1197, 1212-13 (11th Cir. 1989); 7C Wright, Miller, and Kane, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2d § 1917, at 457 (2d ed. 1986)).

*Lujan*, 504 U.S. at 560. While Plaintiffs dismiss this interest as speculative, it is well established that a party can establish injury in fact based on future conduct where there is a reasonable expectation that the conduct will occur again. *See, e.g.*, *Sosna v. Iowa*, 419 U.S. 393, 399-400 (1975); *Roe v. Wade*, 410 U.S. 113, 125 (1973). Garden State Equality members testified about severe, long-term harms that they suffered as a result of being subjected to these practices as minors, including depression and suicidality. (*See* Br. at 10.) Plaintiffs have admitted that but for the enforcement of A3371, they would resume the practices banned by the statute.

A significant part of the benefit bestowed by the statute is the confidence that minors seeking professional counseling and their parents can have that licensed therapists in New Jersey will not engage in these harmful practices. Members of Garden State Equality who are minors or parents of minors would lose that benefit were this lawsuit to result in the invalidation of A3371.

Finally, it is equally clear that the harms that members of Garden State Equality would suffer in the absence of A3371 would be redressed by a decision upholding the law. (*See* Br. at 10.) As such, Garden State Equality meets the requirements of Article III standing. *Lujan*, 504 U.S. at 560.

**III.   INTERVENTION BY GARDEN STATE EQUALITY IS APPROPRIATE AND WILL ASSIST THE COURT IN FAIRLY AND EFFICIENTLY ADJUDICATING THE PARTIES' CLAIMS**

As more fully explained in its opening brief, Garden State Equality satisfies the requirements for intervention under Federal Rule 24(b) and its intervention will assist the court in fairly and efficiently adjudicating the parties claims. (*See* Br. at 6-14.) "Permissive intervention under Rule 24 requires (1) the motion to be timely; (2) an applicant's claim or defense and the main action have a question of law or fact in common; and (3) the intervention may not cause undue delay or prejudice to the original parties' rights." *King*, 2013 WL 5970343, at *7 (citing Fed. R. Civ. P. 24(b); *N.C.A.A. v. Governor of N.J.*, 520 F. App'x 61, 63 (3d Cir.

2013); *Appleton v. Comm'r*, 430 F. App'x. 135, 137-38 (3d Cir. 2011)). Notably, Plaintiffs do not dispute that Garden State Equality timely filed its motion to intervene or that its defenses have a question of law in common with the main action. Instead, they raise three arguments: (1) that Garden State Equality's interests are adequately represented by Defendant, (2) that intervention would be "superfluous at best," and (3) that intervention would be unduly prejudicial. (*See* Pls.' Opp. at 9-12.) None of these arguments have merit.

As this Court found in *King*, Garden State Equality shares interests represented by the State, and the presence of these overlapping interests "does not preclude permissive intervention." 2013 WL 5970343, at *7. Indeed, Plaintiffs' argument turns one of the requirements of Rule 24(b) on its head when it cites the commonality of interests regarding A3371 between Garden State Equality and Defendant as a reason to deny the intervention motion; rather, as the Court noted in *King*, "[t]he shared interests of [Garden State] and the state defendant[] support [Garden State's] argument that it shares a common question of law with the current action because it plans to defend the constitutionality of [A3371], the subject of the dispute between plaintiffs and the state defendant[]." 2013 WL 5970343, at *7 (citing *Pickup v. Brown*, No. 12-2497, 2012 U.S. Dist. LEXIS 172027, at *13-*14 (E.D. Cal. Dec. 4, 2012)). Moreover, Plaintiffs wholly ignore that despite shared interests, Garden State Equality can provide "a helpful, alternative viewpoint from the vantage of some persons who have undergone SOCE treatment or are potential patients of treatment that will aid the court in resolving plaintiffs' claims fully and fairly." *King*, 2013 WL 5970343, at *8. Thus, Garden State Equality's intervention is not superfluous. Finally, as the Court recognized in *King*, "while Plaintiffs may have [to] expend[] additional time or expense in order to respond to Garden State's arguments, those efforts are not unduly prejudicial or burdensome." *Id.* There, as here,

7

because "Garden State's arguments and positions are similar to those advanced by the State," its "filings in this matter would not unduly expand Plaintiffs' submissions." *Id*.

## CONCLUSION

For all the reasons discussed above, and for those articulated in Garden State Equality's opening brief, Garden State Equality respectfully requests that the Court grant its motion to intervene.

Dated: December 9, 2013

GluckWalrath LLP

By:    */s Andrew Bayer*
Michael Gluck
Andrew Bayer
428 River View Plaza
Trenton, NJ 08611
Telephone:   (609) 278-3900
Facsimile:    (609) 278-3901

KIRKLAND & ELLIS LLP

By:    */s David S. Flugman*
Frank Holozubiec
David S. Flugman
Brett J. Broadwater
Shireen A. Barday
Andrew C. Orr
  *Pro hac vice applications pending*
601 Lexington Avenue
New York, NY 10022
Telephone:   (212) 446-4800
Facsimile:    (212) 446-4900

-- and --

Andrew J. Welz
  *Pro hac vice application pending*
655 Fifteenth Street, NW
Washington, D.C. 20005
Telephone:   (202) 879-5000
Facsimile:    (202) 879-5200

8

NATIONAL CENTER FOR
LESBIAN RIGHTS

By:   */s Shannon P. Minter*
Shannon P. Minter
Amy Whelan
Christopher F. Stoll
  *Pro hac vice applications pending*
870 Market Street, Suite 370
San Francisco, CA 94102
Telephone:   (415) 392-6257
Facsimile:   (415) 392-8442

*Attorneys for Intervenor-Defendant
Garden State Equality*

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of December, 2013, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/EFC.

*/s/ Andrew Bayer*
Andrew Bayer
