**\*FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

The Honorable Freda L. Wolfson, U.S.D.J.

| | |
|---|---|
| JOHN DOE, *et al.*, | Civil Action No. 13-6629 |
| Plaintiffs, | |
| vs. | **OPINION** |
| CHRISTOPHER J. CHRISTIE, Governor of New Jersey, | |
| Defendant. | |

**Appearances:**

*Counsel for Plaintiffs*

Demetrios K. Stratis, Esq.
Law Office of Demetrios K. Stratis, LLC
10-04 River Road
Fair Lawn, NJ 07410

*Counsel for Proposed Intervenor*

Andrew Bayer, Esq.
Gluck Walrath, LLP
428 Riverview Plaza
Trenton, NJ 08611

*Counsel for Defendant*

Susan Marie Scott, Esq.
Eric S. Pasternack, Esq.
Robert T. Lougy, Esq.
Office of the NJ Attorney General
R.J. Hughes Justice Complex
PO Box 112
Trenton, NJ 08625

Plaintiffs John Doe, a minor child by and through his parents Jack and Jane Doe, as well as Jack and Jane Doe, individually (collectively, "Plaintiffs"), filed this lawsuit against Defendant New Jersey Governor Christopher J. Christie ("Defendant" or "Governor Christie"), challenging the constitutionality of Assembly Bill Number A3371 ("A3371") (codified at N.J.S.A. 45:1-54, -55),[1] which prohibits New Jersey state licensed practitioners, who provide professional counseling services, from treating minors using methods of Sexual Orientation Change Efforts ("SOCE"), more commonly known as "gay conversion therapy."  Plaintiff John Doe seeks to engage in SOCE, and his parents Jack and Jane Doe wish the same for him, but Plaintiffs are precluded from obtaining SOCE in New Jersey under the prohibition set forth in A3371, and thus they have filed the instant action seeking a declaration that the statute is unconstitutional, and enjoining the operation thereof.  Plaintiffs' core challenge to A3371 focuses on whether, by prohibiting the practice of SOCE, New Jersey has impermissibly infringed upon Plaintiffs' First Amendment rights—*i.e.*, freedom of speech and religious expression—as well as Plaintiffs Jack and Jane Doe's constitutional right to care for their child and direct his upbringing.  In line with this Court's previous decision in a similar lawsuit, brought by therapists challenging the constitutionality of A3371, *see King v.*

---

[1]     At the time Plaintiffs brought this suit, Assembly Bill A3371 had not been codified as a statute, and thus, the parties refer in their papers to the now-codified statute as A3371.    In this Opinion, the Court will interchangeably use A3371 or N.J.S.A. 45:1-54. -55.

*Christie*, 981 F. Supp. 2d 296 (D.N.J. 2013), as well as the law applicable to Plaintiffs' specific claims, I conclude that A3371 passes constitutional muster. Accordingly, Defendant's moti0n to dismiss is **GRANTED** in its entirety; and Plaintiffs' motion for preliminary injunction is **DENIED**. Additionally, Garden State Equality ("Garden State") has filed a motion to intervene under F.R.C.P. 24(b), which is **GRANTED**.

## BACKGROUND & PROCEDURAL HISTORY

On August 19, 2013, Governor Christie signed into law A3371, prohibiting New Jersey state-licensed practitioners, who provide professional counseling services, from treating minors using methods of SOCE, *i.e.*, "gay conversion therapy;" A3371 became effective on the same date. Following the signing of A3371 into law by Defendant, a lawsuit challenging the constitutionality of the statute was filed in this Court by Tara King Ed.D. and Ronald Newman, Ph.D., who are licensed therapists, as well as the National Association for Research and Therapy of Homosexuality ("NARTH") and the American Association of Christian Counselors ("AACC") (hereinafter referred to collectively as the "therapist-plaintiffs"). On November 8, 2013, this Court rendered a decision upholding the constitutionality of A3371 as to the therapist-plaintiffs, and accordingly, denied their preliminary injunction. *See King v. Christie*, 981 F. Supp. 2d 296. However, before that decision had been issued, Plaintiffs filed their own Complaint, raising similar challenges to A3371 but from the standpoint of potential recipients, rather than providers, of SOCE, and seeking to enjoin the operation of the statute. Nevertheless, despite the

3

change in parties, Plaintiffs in this case are represented by the same counsel as are the therapist-plaintiffs in the *King v. Christie* case.

After the Court issued its decision in *King*, and during the course of the parties' briefing in the present matter, the Court inquired of Plaintiffs how they wished to proceed with their litigation, given the substantial overlap between *King* and the instant matter, including whether Plaintiffs wanted to supply additional argument addressing *King*. Declining to directly challenge the reasoning of my previous decision, Plaintiffs indicated they would rely on their initial briefing and substantially the same law and arguments raised in *King*, but as applied instead to individuals like Plaintiffs—*i.e.*, minor individuals and their parents who seek out SOCE, but are precluded from obtaining it in New Jersey by virtue of A3371. In light of the posture of the instant matter, and Plaintiffs' decision to rely on similar arguments and reasoning as the therapist-plaintiffs in *King*, in this Opinion I recite only those facts and law directly applicable to Plaintiffs' claims; further background on the issues of SOCE underlying the enactment of A3371, as well as the challenge to the California statute upon which A3371 is modeled, can be found in *King*.

Assembly Bill A3371 precludes persons licensed to practice in certain counseling professions from engaging in "the practice of seeking to change a [minor's] sexual orientation." § 2(b). The statute has two sections; Section 1 provides legislative findings and declarations, while Section 2 defines SOCE and establishes the scope of the legislative prohibition on such conduct. Simply put, A3371 prohibits licensed professionals in New

Jersey from engaging in SOCE, deeming it of questionable benefit, and even potentially harmful, to minors.

In *King*, by opinion dated November 8, 2014, I determined that A3371 (i) does not violate the therapist-plaintiffs' First Amendment right to free speech because the statute regulates conduct, not speech, and does not have an incidental effect on speech, (ii) is rationally related to the state's interest in protecting minors from professional counselling deemed harmful, (iii) is neither unconstitutionally overbroad nor vague, and (iv) does not violate the Free Exercise Clause of the First Amendment. I further rejected the therapist-plaintiffs' attempt to assert a claim on behalf of minor children who desired to engage in SOCE, finding that the therapist-plaintiffs lacked third-party standing to bring such a claim. Finally, I addressed a motion to intervene under F.R.C.P. 24(b) by Garden State—self-described as "the largest civil rights organization in the State of New Jersey and a leading advocate for New Jersey's lesbian, gay, bisexual, and transgender residents." Garden State Interve. Br., 1. Rejecting the therapist-plaintiffs' arguments I determined that Garden State did not require Article III standing to permissively intervene in the case, and, after finding that the requirements of Rule 24(b) were satisfied, granted Garden State leave to intervene. *See generally King v. Christie*, 918 F. Supp 2d. 296.

A week before I rendered my decision in *King*, Plaintiffs here filed their Complaint and motion for a preliminary injunction. Plaintiffs did not indicate that their case was related to the *King* case, and so their Complaint was initially assigned to another district judge. On November 4, 2013,

Plaintiffs' Complaint was transferred to me, and on November 14, 2013, I held a telephonic conference call with the parties, the primary purpose of which was to determine how Plaintiffs wished to proceed with their Complaint in light of my decision in *King*.[2] At that time, Plaintiffs indicated they would continue to rely on the briefing submitted with their preliminary injunction motion, and counsel for Defendant indicated that she would be filing a combined opposition to Plaintiffs' motion and a cross-motion to dismiss under Rule 12(b)(6), to which Plaintiffs filed a reply. Garden State also filed a motion to dismiss under Rule 12(b)(6), raising arguments substantially identical to those of Defendant.

On March 28, 2014, following the completion of briefing, the Court issued a Letter Order, staying the matter and administratively terminating the parties' motions due to a pending petition for *certiorari* before the United States Supreme Court from the Ninth Circuit's decision in *Pickup v. Brown*, 740 F.3d 1208, 1235 (9th Cir. 2014) *cert. denied*, 13-1281, 2014 WL 1669209 (U.S. June 30, 2014) *and cert. denied*, 13-949, 2014 WL 514711 (U.S. June 30, 2014). In the Letter Order, I explained that because of the identity of the issues between *Pickup* and the instant matter—including both (i) my reliance on *Pickup* as persuasive authority supporting my decision in *King* and (ii) the fact that *Pickup* addressed the same claims related to parental rights that Plaintiffs here assert—the posture of the *Pickup* case made it prudent, and in the interest of judicial economy, to stay

---

[2]   As noted, counsel for all parties are the same in both *King* and the instant matter.

6

Plaintiffs' matter pending a decision by the Supreme Court on the *Pickup certiorari* petition. *See* Dkt. No. 26 (Letter Order), 2-3. Last month, the Supreme Court denied the *Pickup* petition, leaving the Ninth Circuit's decision intact. Accordingly, given that *Pickup* remains good law, and that the Third Circuit has yet to issue any decision on the appeal from my opinion in *King*, I find it appropriate to lift the stay of the instant matter and reinstate Plaintiffs' motion for a preliminary injunction, Defendant's cross-motion to dismiss under Rule 12(b)(6), and Garden State's motion to intervene and motion to dismiss.

## DISCUSSION

## I.     Standard of Review—Motion to Dismiss[3]

In reviewing a motion to dismiss on the pleadings, the court "accept[s] all factual allegations as true, construe[s] the complaint in the light most favorable to the plaintiff, and determine[s] whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."

---

[3]     Rather than conduct separate analyses for Plaintiffs' motion for a preliminary injunction, and Defendant's cross-motion and Garden State's motion to dismiss under Rule 12(b)(6), I resolve Plaintiffs' claims by determining, under Rule 12(b)(6), if they state a claim upon which relief can be granted. If Plaintiffs' claims cannot survive Defendant's or Garden State's motions to dismiss, Plaintiffs would necessarily be unable to make a showing of likelihood of success on the merits in support of their preliminary injunction. *See Conestoga Wood Specialties Corp. v. Sec'y of the U.S. Health and Serv.*, 724 F.3d 377, 382 (3d Cir. 2013) (setting forth likelihood of success on merits a prerequisite for granting preliminary injunction); *see also NutraSweet Co. v. Vit-Mar Enters., Inc.*, 176 F.3d 151, 153 (3d Cir. 1999) ("A plaintiff's failure to establish *any* element in its favor renders a preliminary injunction inappropriate." (Emphasis added.)). Additionally, because Garden State's arguments essentially track Defendant's arguments, I refer simply to Defendant's arguments in the ensuing analysis.

*Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir.2008) (citation and quotations omitted).  As such, a motion to dismiss for failure to state a claim upon which relief can be granted does not attack the merits of the action but merely tests the legal sufficiency of the complaint.  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir.2009) (internal quotations omitted); *see also* Fed. R. Civ. P. 8(a)(2) ("[a] pleading that states a claim for relief . . . must contain a short and plain statement of the claim showing the pleader is entitled to relief").  In other words, to survive a Fed R. Civ. P. 12(b)(6) motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"  *Id.* (quoting *Twombly*, 550 U.S. at 570).

However, "the tenet that a court must accept as true all the allegations contained in the complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* (citing *Twombly*, 550 U.S. at 555).  Plaintiff must show that there is "more than a sheer possibility that the defendant has act unlawfully."  *Id.* (citing *Twombly*, 550 U.S. at 556).  This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  In other words, for the plaintiff to prevail, the "complaint must do more than allege the plaintiff's entitlement to relief;" it must "'show' such an entitlement with its facts."  *Fowler*, 578 F.3d at 211 (citing *Phillips*, 515 F.3d at 234–35).

8

The Third Circuit cautioned, however, that *Twombly* and *Iqbal* "do not provide a panacea for defendants," rather, "they merely require that plaintiff raise a 'plausible claim for relief.'"   *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) (quoting *Iqbal*, 556 U.S. at 679).   Thus, factual allegations must be more than speculative, but the pleading standard "is not akin to a 'probability requirement.'"   *Id.* (quoting *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 556).

## II.    Motion to Intervene by Garden State

As in *King*, Garden State has filed a motion to intervene that Plaintiffs oppose.  The only difference in this case between Garden State's motion and Plaintiff's opposition, as compared to *King*, is the change in named plaintiffs.  In *King*, Garden State sought to permissively intervene under Fed. R. Civ. P. 24(b),[4] which the therapist-plaintiffs opposed on the grounds that Garden State (i) lacked standing, and (ii) did not otherwise satisfy the requirements of Rule 24(b).  I rejected the therapist-plaintiffs' arguments, finding that Garden State did not require Article III standing to permissively intervene under Rule 24(b), and further determining that

---

[4]    Permissive intervention under Rule 24 requires (1) the motion to be timely; (2) an applicant's claim or defense and the main action have a question of law or fact in common; and (3) the intervention may not cause undue delay or prejudice to the original parties' rights.  *See* Fed. R. Civ. P. 24(b); *see also N.C.A.A. v. Governor of N.J.*, 520 F. App'x 61, 63 (3d Cir. 2013); *Appleton v. Comm'r*, 430 F. App'x 135, 137-38 (3d Cir. 2011).  So long as these threshold requirements are met, whether to allow a party to permissively intervene is left to the sound discretion of the court.  *See N.C.A.A.*, 520 F. App'x at 63.

Garden State satisfied the requirements for permissive intervention. Accordingly, I granted Garden State's motion.

Here, Plaintiffs raise identical arguments that Garden State lacks standing and fails to satisfy Rule 24(b). Again, other than the names of the Plaintiffs and the precise nature of their constitutional claims, nothing else has changed between *King* and this case. These two differences do not affect my reasoning that Garden State (i) need not show Article III standing to permissively intervene, and (ii) otherwise satisfies the requirements of Rule 24(b). Indeed, I found in *King* that Garden State "provide[s] a helpful, alternative viewpoint from the vantage of some persons who have undergone SOCE treatment o*r are potential patients of treatment* that will aid the court in resolving plaintiffs' claims fully and fairly." *King v. Christie*, 981 F. Supp. 2d at 310 (emphasis added; internal quotation marks omitted). This viewpoint will be equally beneficial in the present matter, in which Plaintiffs are a potential patient of SOCE and his parents. Thus, for the same reasons as stated at length in *King*, and for the additional reasons stated above, I find that Garden State satisfies the Rule 24(b) factors in this case, and is thereby given leave to intervene.

### III.   First Amendment—Freedom of Speech

Plaintiffs first challenge the constitutionality of A3371 on the ground that it violates their First Amendment right to free speech, specifically, the "fundamental right of Plaintiffs to receive information." Compl., ¶ 125. Plaintiffs argue that the First Amendment "protects the right to receive information as a corollary of the right to speak" and "A3371 deprives

Plaintiffs of this right during counseling sessions because it prohibits licensed counselors from offering SOCE counseling to minors." Pl. Prelim. Inj. Br., 3. On that basis, Plaintiffs contend that, as a regulation of Plaintiffs' first amendment right to receive information, A3371 cannot survive the applicable standard of review, *i.e.*, strict scrutiny. As before, Defendant rejects Plaintiffs' interpretation of A3371, and, in particular, that the statute regulates, or implicates, speech in any form, let alone Plaintiffs' right to receive information. Rather, Defendant claims that the statute merely restricts a licensed professional from engaging in practicing SOCE counseling, and accordingly is a rational exercise of the state's long-recognized power to reasonably regulate the counseling professions. In that connection, Defendant asserts that A3371 targets conduct only, not speech. Accordingly, Defendant argues that the statute does not implicate any fundamental constitutional right and withstands rational basis review.

In *King*, after reviewing the plain language of A3371 and relevant case law, and noting that the therapist-plaintiffs failed to provide any contrary law, I found that "that A3371 does not directly regulate or target speech on its face," and, further, that "the mere fact that counseling may be carried out through talk therapy does not alter my finding that A3371 regulates conduct and not speech." *King v. Christie*, 981 F. Supp. 2d at 314, 317; *see also Planned Parenthood of Se. Pennsylvania v. Casey*, 505 U.S. 833, 884 (1992) ("All that is left of petitioners' argument is an asserted First Amendment right of a physician not to provide information about the risks of abortion, and childbirth, in a manner mandated by the State. To be sure,

the physician's First Amendment rights not to speak are implicated . . . but only as part of the practice of medicine, subject to reasonable licensing and regulation by the State . . . . We see no constitutional infirmity in the requirement that the physician provide the information mandated by the State here." (Citations omitted.)). As noted earlier, Plaintiffs have advanced no new argument or law in support of their contention that A3371 regulates speech that I did not already consider in *King*.[5]

Furthermore, I concluded in *King* that A3371 does not implicate speech, but rather governs conduct. *King*, 981 F. Supp. 2d at 317. Under the reasoning set forth in *King*, A3371 regulates mental health *treatment*— albeit in the form for talk therapy—not any particular *speech* of counselors or therapists involving certain views. This distinction is significant because, as I have delineated in *King*, states are permitted to regulate medical and mental health treatment providers under a reasonable licensing scheme. Because I found that SOCE is a form of mental health counseling, *i.e.*, conduct not speech, Plaintiffs cannot assert that prohibiting counselors to

---

[5] Instead, Plaintiffs merely ask this Court to "revisit its previous positions on A3371." Pl. Prelim. Inj. Reply Br., 2. Plaintiffs do not provide any new or additional argument that would support this Court revisiting its previous interpretation A3371, or point to any mistake or fact that this Court overlooked in *King*. *Cf.* L. Civ. R. 7.1(i) (governing reconsiderations of previous decisions); *Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010) (explaining that reconsideration is only appropriate upon either "(1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct [a] clear error of law or prevent manifest injustice"). Indeed, when this Court inquired of Plaintiffs' counsel whether they wished to submit supplemental briefing on the impact of my decision in *King*, counsel declined, effectively conceding that I had considered all the law applicable to analyzing the constitutionality of A3371. Accordingly, I reject Plaintiffs' request to alter or amend my previous decision on A3371.

engage in SOCE implicates Plaintiffs' right to receive information from counselors.[6]

It is clear, both from Plaintiffs' argument and the relevant law, that Plaintiffs' right to receive information is a corollary to Plaintiffs' right to free speech. *See* Pl. Prelim. Inj. Br., 3; *see also Bd. of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico*, 457 U.S. 853, 867 (1982) ("[T]he right to receive ideas follows ineluctably from the sender's First Amendment right to send them . . . ."). Thus, Plaintiffs' right to receive information claim is premised on free speech principles. But, Plaintiffs conflate information regarding SOCE with SOCE practices engaged in by therapists; the latter is considered conduct, reasonably and legitimately prohibited by A3371, the former is not. Indeed, it is clear from my analysis in *King* that A3371 does *not* prevent the dissemination of information regarding SOCE—it *only*

---

[6]     Indeed, I reasoned that the therapist-plaintiffs could not cloak themselves with the First Amendment in order to fend off reasonable regulation by the state of the mental health treatment they provide. Accepting the therapist-plaintiffs' argument that New Jersey could not prohibit SOCE because it is carried out through talk-therapy—which the therapist-plaintiffs contended is a form a speech—would effectively immunize therapists or counselors from *any* regulation of their profession by the state. Thus, I rejected the therapist-plaintiffs' position, finding that such a result runs counter to the long recognized authority of the states to legitimately regulate the medical professions. *King v. Christie*, 918 F. Supp. 2d at 319 (collecting cases); *see also Wollschlaeger v. Governor of Florida*, Civ No. 12-14009, ___ F.3d ___, ___, 2014 WL 3695296, at *19 n. 17 (11th Cir. 2014) (recognizing "that a state may—just as it routinely does in state court malpractice and tort actions—impose discipline on a physician for activities that the state deems bad medicine even when those activities involve the physician speaking, and that when a state does so the First Amendment generally does not provide the physician with a shield").

prevents counselors from engaging in SOCE under the auspices of mental health treatment:

> Nothing in the plain language of A3371 prevents licensed professionals from voicing their opinions on the appropriateness or efficacy of SOCE, either in public or private settings. Indeed, A3371 does not prevent a licensed professional from, for example, lecturing about SOCE at a conference or providing literature to a client on SOCE; the statute only prohibits a licensed professional from engaging in counseling for the purpose of actually practicing SOCE.

*King v. Christie*, 981 F. Supp. 2d at 314.  The corollary to this finding is that an individual seeking information regarding SOCE, such as Plaintiff John Doe, is not prevented from receiving literature on SOCE, or attending lectures on SOCE.

In sum, A3371 does not implicate Plaintiffs' free speech rights because the statute (i) does not regulate speech, directly or indirectly, but rather only regulates a mental health procedure performed by licensed counselors or therapists, and (ii) does not prevent the receipt of information regarding SOCE *outside* the counseling or therapy setting.  Accordingly, Plaintiffs' claim that the statute violates their right to receive information is without merit.

Further in line with this determination, I discern no basis on which to disturb my previous conclusion that A3371 is subject to rational basis review.  *King v. Christie*, 981 F. Supp. 2d at 326.  Indeed, much of Plaintiffs' argument in that regard focuses on the reasonableness of the legislatures' findings supporting A3371 as failing to bear out the conclusion that SOCE is harmful to minors.  As to that contention, I found in *King* that rationale

14

basis is a low standard, and that the evidence upon which a legislature relies in enacting laws subject to review under that standard need not be shown to a mathematical certainty—the law is clear that a state need not provide *any* justification or rationale for its legislative decision. *Id.* at 325-26. Thus, in light of my finding that A3371 targets only licensed professionals who engage in professional counseling of minors, and restricts them from performing the specific type of conduct—SOCE counseling—that the legislature deemed harmful, I concluded that this nexus is more than adequate to satisfy rational basis review. Furthermore, even accepting Plaintiffs' argument that, at most, the evidence relied on by the legislature in enacting A3371 demonstrates that SOCE is inefficacious—but not harmful—I would still reach the same conclusion that A3371 withstands rational basis review. Surely it is undisputed that a state has the power to regulate not only medical and mental health treatments deemed harmful, but also those that are ineffective or that are based not on medical or scientific principles but, instead, on pseudo-science. *See, e.g.*, *Washington v. Glucksberg*, 521 U.S. 702, 731 (1997) ("The State also has an interest in protecting the integrity and ethics of the medical profession."); *Wollschlaeger v. Governor of Florida*, Civ. No. 12-14009, ___ F.3d ___, ___, 2014 WL 3695296, at *17 (11th Cir. 2014) ("'[A] state's legitimate concern for maintaining high standards of professional conduct extends beyond initial licensing.'" (Quoting *Barsky v. Bd. of Regents*, 347 U.S. 442, 451 (1954).))). Thus, regardless of whether the legislature's findings show that SOCE is harmful or merely ineffective, I find that the enactment of A3371

15

prohibiting SOCE on minors is a rational and legitimate exercise of New Jersey's power to reasonably regulate licensed medical and mental health professionals. *See King*, 981 F. Supp. 2d at 319.

For these reasons, Plaintiffs cannot state a claim for violation of their First Amendment right to receive information. Accordingly, Count I of the Complaint is dismissed.

## IV.    First Amendment—Free Exercise of Religion

Plaintiffs maintain that in addition to their speech being unlawfully constrained, A3371 infringes on their First Amendment right to exercise their sincerely held religious beliefs that changing same-sex attraction or behavior is possible.  Therefore, Plaintiffs reason, A3371 imposes a substantial burden on those religious beliefs because it prohibits Plaintiff John Doe from obtaining spiritual advice[7] and assistance on the subject matter of same-sex attractions.  Plaintiffs' argument is unavailing.

In *King*, the therapist-plaintiffs raised an identical argument except from the perspective that A3371 imposed a substantial burden on their own religious beliefs because it prohibited them from providing SOCE.  In that regard, I determined that A3371 did not violate the Free Exercise Clause because the statute (i) is facially neutral with respect to religion, and (ii) is

---

[7]     As I stated in *King*, nothing in A3371 prohibits religious figures from providing spiritual guidance on the issue of sexual orientation, and, therefore, does not prevent Plaintiffs from obtaining that guidance; the statute *only* prohibits the use of SOCE practices by those individuals who are state-licensed therapists and counselors. *King v. Christie*, 981 F. Supp. 2d at 328 ("Nothing in A3371 prevents . . . SOCE treatment by another unlicensed person such as a religious figure . . . .").

16

one of generally applicability, and therefore, only subject to a rational basis test, which, as already noted, it readily passes. Specifically, I found that "[b]ecause of the statute's neutrality, even if A3371 disproportionately affects those motivated by religious belief, this fact does not raise any Free Exercise concerns." *King v. Christie*, 981 F. Supp. 2d at 332 (citing *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 581 (1993)). Similarly, I determined that "the statute is also generally applicable because A3371 does not suppress, target, or single out the practice of any religion because of religious conduct." *Id.*

Plaintiffs in this case raise virtually identical arguments, and rely on the same case law and reasoning in support thereof.[8] Indeed, the only difference is that in this case, Plaintiffs contend their Free Exercise right is violated because they cannot *receive* SOCE, whereas in *King* the therapist-plaintiffs based their alleged Free Exercise right violation on the prohibition of *providing* SOCE. This distinction does not alter the Free Exercise analysis; it is of no moment that Plaintiffs are objecting to the prohibition of receiving SOCE because the focus of my analysis is on whether A3371's overall prohibition of SOCE—from *either* the therapist's or patient's perspective—is facially neutral and generally applicable. I conclude that it is for the same reasons as set forth in *King*. Thus, Plaintiffs cannot state a claim for violation of the Free Exercise Clause.

---

[8]     Again, as with Plaintiffs' freedom of speech arguments, Plaintiffs do not set forth any basis for this Court to revisit its previous decision in *King* regarding A3371's constitutionality under the Free Exercise clause. *See supra*, Footnote 5.

Accordingly, Count II of Plaintiffs' Complaint is dismissed.

## V.      Fourteenth Amendment—Parental Right To Direct The Upbringing Of Children

Plaintiffs' only claim that substantially differs from the type of claims brought in *King* is their contention that A3371 violates Plaintiffs Jack and Jane Does' due process rights to care for the mental health of their child as they see fit.[9]   Specifically, Plaintiffs contend that parents are vested with the care, custody, and control of their children, which decisions are guaranteed through the Fourteenth Amendment.   In that regard, Plaintiffs contend that this right gives parents constitutionally-protected authority to select medical procedures and otherwise decide what is best for their child, without interference by the state or federal government.   In response, Defendant argues that, regardless of the scope of parental rights protected

---

[9]      In the Complaint under Count III, Plaintiffs' heading refers to Plaintiffs' "hybrid" First and Fourteenth Amendment parental rights; in Count IV, Plaintiffs' heading refers to Plaintiffs' Jack and Jane Doe's "fundamental parental rights."   In *King*, I summarily rejected the therapist-plaintiffs' invitation to apply the hybrid rights doctrine, finding that the Third Circuit has declined to apply this theory of constitutional claim.   *King v. Christie*, 981 F. Supp. 2d at 333 (citing *Brown v. City of Pittsburgh*, 586 F.3d 263, 284 n.24 (3d Cir. 2009)).   Plaintiffs here have offered nothing additional in support of such a claim.

Moreover, review of Plaintiffs' legal argument as well as the specific allegations of the Complaint reveal that in both Counts III and Count IV, Plaintiffs are effectively asserting a Fourteenth Amendment parental rights claim, and accordingly, I will analyze it as such.   To the extent that Plaintiffs are asserting in Count III of the Complaint a separate First Amendment free speech and/or Free Exercise claim on behalf of Plaintiffs Jack and Jane Doe in their capacity as parents of John Doe, that claim is duplicative of their First Amendment claims asserted in Counts I and II, and will be dismissed on that basis as well.

by the Fourteenth Amendment, parents do not have a right to select a medical treatment for their child that the state has deemed harmful.

It is well established that the Constitution protects parents' decisions regarding the care, custody, and control of their children; however, this protection is not without qualification. *Pickup v. Brown*, 740 F.3d at 1235 (quoting *Fields v. Palmdale Sch. Dist.*, 427 F.3d 1197, 1204 (9th Cir. 2005) (noting that states may pass laws regarding compulsory school attendance, mandatory school uniforms, and imposing curfew on minors only)); *see also Prince v. Massachusetts*, 321 U.S. 158, 166 (1944) (holding that compulsory vaccination of children is constitutionally permissible under most circumstances).   More particularly, "a state is not without constitutional control over parental discretion in dealing with children when their physical or mental health is jeopardized." *Parham v. J.R.,* 442 U.S. 584, 603 (1979).  "[N]either rights of religion nor rights of parenthood are beyond limitation.  Acting to guard the general interest in youth's well being, the state['s] . . . authority is not nullified merely because the parent grounds his claim to control the child's course of conduct on religion or conscience." *Prince*, 321 U.S. at 166; *cf. Wisconsin v. Yoder*, 406 U.S. 205, 220 (1972)("[A]ctivities of individuals, even when religiously based, are often subject to regulation by the States in the exercise of their undoubted power to promote the health, safety, and general welfare, or the Federal Government in the exercise of its delegated powers."); *Troxel v. Granville*, 530 U.S. 57, 88 (2000) (Stevens, J., dissenting) ("A parent's rights with respect to her child have thus never been regarded as absolute . . . [and] a

19

parent's interests in a child must be balanced against the State's long-recognized interests as *parens patriae*."); *Sweaney v. Ada Cnty., Idaho*, 119 F.3d 1385, 1391 (9th Cir. 1997) ("Parents have no more of an unlimited right to inflict corporal punishment on their children under the Fourth and Fourteenth Amendments than they do under the Free Exercise Clause.").

It is further without dispute that the state has a compelling interest in protecting children, and has broad authority to do so. *Croft v. Westmoreland Co. Children and Youth Serv.*, 103 F.3d 1123, 1125 (3d Cir. 1997); *see also Prince v. Massachusetts*, 321 U.S. at 167 ("[T]he state has a wide range of power for limiting parental freedom and authority in things affecting the child's welfare."); *id.* at 168 ("The state's authority over children's activities is broader than over like actions of adults."); *cf. Hodgson v. Minnesota*, 497 U.S. 417, 471 (1990) ("[W]here parental involvement threatens to harm the child, the parent's authority must yield.").

Here, Plaintiffs Jack and Jane Doe contend that their fundamental right to care for their son, John Doe, is infringed by A3371 because it prevents them from making decisions concerning their child's mental, emotional, and physical health in the area of SOCE counseling.   Put differently, Plaintiffs argue that their rights as parents are being violated because they are prohibited from obtaining a specific form of mental health counseling for their child in the state of New Jersey—not because the State is affirmatively imposing a type of care for John Doe.

20

Plaintiffs provide no case law or other authority in support of the proposition that Jack and Jane Doe's fundamental parental rights encompass the right to choose for their son any medical treatment they desire.  The cases Plaintiffs cite all concern situations in which the state has positively interjected itself into parental decision making or the family structure; absent is any case in which a court has affirmatively found that parents are constitutionally entitled to select a specific type of medical care for their child that the state has reasonably deemed harmful or ineffective. Indeed, to the contrary, the Ninth Circuit—in one of the few decisions that speaks directly to this issue—has concluded that "the fundamental rights of parents *do not include* the right to choose a specific type of provider for a specific medical or mental health treatment that the state has reasonably deemed harmful." *Pickup v. Brown*, 740 F.3d at 1236 (emphasis added).[10] And while the Third Circuit has not expressly ruled on the issue, numerous other courts have reached the same conclusion.  *E.g., Nat'l Ass'n for Advancement of Psychoanalysis v. California Bd. of Psychology*, 228 F.3d 1043, 1050 (9th Cir. 2000) (holding that "substantive due process rights do not extend to the choice of type of treatment or of a particular health care provider" and that "there is no fundamental right to choose a mental health professional with specific training"); *Mitchell v. Clayton*, 995 F.2d 772, 775 (7th Cir. 1993) ("[A] patient does not have a constitutional right to obtain a

----

[10]     Given that (i) the original *Pickup* panel decision was affirmed *en banc* by the Ninth Circuit, (ii) the Supreme Court denied the *Pickup* petition for *certiorari*; and (iii) the lack of *any* authority in support of Plaintiffs' position, I find *Pickup* to be particularly persuasive on this issue.

particular type of treatment or to obtain treatment from a particular provider if the government has reasonably prohibited that type of treatment or provider."); *see also Carnohan v. United States*, 616 F.2d 1120, 1122 (9th Cir. 1980) (per curiam) (holding that there is no substantive due process right to obtain drugs that the FDA has not approved); *Rutherford v. United States*, 616 F.2d 455, 457 (10th Cir. 1980) ("[T]he decision by the patient whether to have a treatment or not is a protected right, but his selection of a particular treatment, or at least a medication, is within the area of governmental interest in protecting public health.").

Thus, I reject Plaintiff's argument that parents have an unqualified right to select medical procedures, *e.g.*, mental health treatment practices, for their children. Surely, the fundamental rights of parents do not include the right to choose a specific medical or mental health treatment that the state has reasonably deemed harmful or ineffective. To find otherwise would create unimaginable and unintentional consequences. For the reasons stated above, as well as in *King*, I conclude that A3371 does not infringe on any recognized parental right.

Accordingly, Counts III and IV of Plaintiffs' Complaint are dismissed.

## VI.  CONCLUSION

For the reasons set forth above, the Court dissolves the stay on this matter and reinstates the parties' motions, subject to the following rulings: Garden State's motion for permissive intervention is **GRANTED**; Plaintiffs' motion for a preliminary injunction is **DENIED**; and Defendant's cross-motion to dismiss and Garden State's motion to dismiss

are both **GRANTED** in their entireties.  Accordingly, all of Plaintiffs' claims

against Defendant are **DISMISSED**.


**DATED**: July 30, 2014              /s/          Freda L. Wolfson
                                      Freda L. Wolfson
                                      United States District Judge

23